EUGENE FAIZAN v. GRAIN DEALERS MUTUAL INSURANCE COMPANY.

(Filed 3 February, 1961.)

**1. Insurance § 54—**

   The Motor Vehicle Safety-Responsibility Act of 1953 (G.S. 20-279.1 to G.S. 20-279.39) applies to drivers whose licenses have been suspended and relates to the restoration of drivers' licenses, while The Vehicle Financial Responsibility Act of 1957 (G.S. 20-309 to G.S. 20-319) applies to all motor vehicle owners and relates to the registration of motor vehicles, and the two Acts are complementary and the latter does not repeal or modify the former, but incorporates portions of the former by reference, and the two Acts are to be construed *in pari materia* so as to harmonize them and give effect to both.

**2. Insurance § 61—**

   Since The Vehicle Financial Responsibility Act of 1957 has specific provision for notice of cancellation, G. S. 20-310, provision for notice of cancellation under The Motor Vehicle-Safety Responsibility Act of 1953, G.S. 20-279.22, had no application to the cancellation of a policy issued pursuant to the 1957 Act.

**3. Same—**

   A policy of insurance issued pursuant to The Vehicle Financial Responsibility Act of 1957 may be canceled, pursuant to its contractual provisions, 15 days after notice of cancellation has been mailed to insured, and it is not required that notice of cancellation should be given the Commissioner of Motor Vehicles 20 days before termination, but only that such notice be given the Commissioner within 15 days after cancellation. G. S. 20-310.

**4. Administrative Law § 4: Statutes § 5b—**

   The interpretation placed upon a statute by the officer or agency charged with its administration will be given due consideration by the courts, although if the administrative interpretation is in conflict with that of the courts, the latter will prevail.

**5: Insurance § 61— Where insured fails to meet conditions of offer for renewal, policy in effect is canceled by insured.**

   Where, more than 15 days prior to the expiration date of a policy issued pursuant to The Vehicle Financial Responsibility Act of 1957, insurer sends insured notice of the expiration date with offer to renew the policy if payment of premium is made by the premium due date, no further notice to insured is required, and the fact that insurer thereafter sends notice of cancellation which, through clerical error, states an erroneous expiration date transpiring after the accident imposing liability on insured, is immaterial and does not impose liability on insurer, insured having failed to accept the offer of renewal by paying the premium on or before the due date.

APPEAL by plaintiff from *McKinnon, J.,* March 1960 Term of PERSON.

This is a civil action, instituted 12 November 1959.

Plaintiff was the owner of an automobile. At approximately 2:30 A. M. on 22 February 1959, it was involved in an accident while being operated by George Washington Talley. As a result of the accident Hassel Nicks Rudd was injured.

Defendant Insurance Company had issued to plaintiff an automobile liability insurance policy covering the automobile involved in the accident. The policy provided coverage of $10,000.00 for bodily injury liability to one person, a total of $20,000.00 bodily injury liability to all persons injured in an accident in which the automobile might be involved, and $5,000.00 property damage liability for each accident. The policy also obligated defendant Insurance Company to defend actions for recovery of damages resulting from the use of the automobile. According to the terms of the policy the period of coverage terminated at 12:01 A.M. on 22 February 1959 — approximately two and one-half hours prior to the accident above referred to.

Rudd brought suit against Faizan, plaintiff herein, and Talley, driver of the automobile, to recover damages for the injuries suffered by him in the accident. Faizan gave Insurance Company notice of the suit. The Insurance Company denied liability and refused to defend the action on the ground that the policy had expired. Faizan defended the action at his own expense and paid his attorneys $700.00 in fees. At the trial Rudd recovered of Faizan and Talley, jointly and severally, $5,000.00 damages. The verdict and judgment established that Faizan was responsible for the negligence of Talley. Talley's insurer paid the judgment on 14 March 1960.

The transactions with respect to the insurance policy issued by defendant Insurance Company to plaintiff are set out in the numbered paragraphs which follow:

(1). In February 1958 Faizan went to the office of Allen-Gates Insurance Agency in Roxboro, N. C., and asked for the issuance of an automobile liability insurance policy. He had been unable to secure insurance through regular channels. He needed insurance in order to obtain registration tags for his automobile and to comply with the Motor Vehicle Responsibility Act of 1957. His operator's license had not been suspended or revoked, and there were no outstanding judgments or damages against him by reason of an automobile accident. On his behalf the Agency sent an application to the North Carolina Automobile Assigned Risk Plan in Raleigh. The risk was duly assigned to defendant Insurance Company and the policy above referred to was issued by it, effective 22 February 1958. About 21 February 1958, at the time of issuance of the policy, defendant prepared and sent to

the Commissioner of Motor Vehicles Form "FS-1 — North Carolina Certificate of Insurance," advising that the policy had been issued. In consequence plaintiff obtained tags for his car.

(2). The Allen-Gates Insurance Agency was not an agent of defendant, but the policy was issued through it. Under these circumstances the Agency is referred to as "producer," in administrative parlance. The premium was paid. In January 1959, pursuant to the rules of the Assigned Risk Plan, defendant sent plaintiff a notice advising that the policy would expire on 22 February 1959 and that in order to renew it plaintiff would have to pay renewal premium in advance and not later than 5 February 1959, which date was designated as the "premium due date." The notice stated the amount of the premium and advised: "Under the terms of the Automobile Assigned Risk Plan, we will renew your policy if payment is received by the premium due date. If we do not receive payment by that date we will assume you no longer desire coverage under the Assigned Risk Plan, and will so notify the producer of record and the Assigned Risk Plan." Plaintiff received this notice in January 1959. A copy was sent to and received by the producer (Allen-Gates Agency) in January 1959. Plaintiff failed to pay the premium on or before 5 February 1959 and did not tender payment thereof at any time thereafter.

(3). On 9 February 1959 defendant wrote a letter to the producer and advised that the premium had not been received and the file was being closed as permitted by the Automobile Assigned Risk Plan. The letter stated: "If assured cannot obtain coverage elsewhere, it will be necessary that he re-apply to the Plan." A copy of the letter was sent to the Plaintiff. Producer and plaintiff received the letter and copy after 9 February 1959 and prior to 22 February 1959.

(4). On 9 February 1959 defendant prepared and mailed to plaintiff a "Notice of Termination of Automobile Insurance" in words and figures as follows:·

"Policy Number
AC 478 206

Effective Date and Hour of Termination: February 24, 1959, at 12:01 A. M,. Standard Time.

GRAIN DEALERS MUTUAL INSURANCE COMPANY, in accordance with the provisions of the Vehicle Financial Responsibility Act of the State of North Carolina, hereby gives notice to: EUGENE FAIZAN, 115 HILL STREET, ROXBORO, NORTH CAROLINA, that its Policy hereinabove designated

will not be renewed and all insurance afforded by said Policy and any renewal certificates and endorsements relating thereto, unless otherwise sooner terminated, will cease at and from the date and hour mentioned above.

UNDER THE PROVISIONS OF THE VEHICLE RESPON-SIBILITY ACT OF THE STATE OF NORTH CAROLINA 'PROOF OF FINANCIAL RESPONSIBILITY IS REQUIRED TO BE MAINTAINED CONTINUOUSLY THROUGHOUT THE REGISTRATION PERIOD AND OPERATION OF A MOTOR VEHICLE WITHOUT MAINTAINING SUCH PROOF OF FINANCIAL RESPONSIBILITY IS A MISDE-MEANOR.' "

This notice was received by plaintiff after 9 February 1959 and be-fore 22 February 1959.

(5). Within 15 days after 22 February 1959 defendant prepared and sent to the Commissioner of Motor Vehicles notice that the in-surance had terminated on 22 February 1959. The notice was on Form "FS-4 — North Carolina Notice of Termination," promulgated by the Commissioner of Motor Vehicles in the administration of the Vehicle Responsibility Act of 1957.

Plaintiff instituted this action for recovery of his liability ($5,000.00) in the Rudd suit and $700.00 attorneys fees paid by him for defense of the action.

Plaintiff and defendant waived trial by jury and agreed that the court might hear the evidence, make findings of fact and conclusions of law, and enter judgment.

After finding the facts hereinbefore recited, the court made the following conclusions of law and entered the following judgment:

## CONCLUSIONS OF LAW

"1. That the automobile liability insurance policy issued by defendant to plaintiff was issued pursuant to the Assigned Risk Plan permitted under the laws of the State of North Carolina; that it was applied for and issued to enable plaintiff to comply with the provisions of the Vehicle Financial Responsibility Act of 1957 and to permit the registration of his 1953 Oldsmobile automobile.

"2. That the insurance coverage afforded by this contract of insurance expired on February 22, 1959, at 12:01 A. M., pursuant to express provisions of the policy.

"3. That the termination of the contract of insurance resulted from its expiration by its express provisions and by the failure

of plaintiff to pay the premium for a renewal policy within the time specified by defendant or at any time, and was not terminated by the insurer within the meaning of G.S. 20-310; that the defendant was not required to give plaintiff any notice other than that given as found above.

"4. That defendant did give notice to the Commissioner of Motor Vehicles within fifteen days after the termination of the contract of insurance in compliance with the requirements of G.S. 20-310; that defendant was not required by G.S. 20-279.22 to give notice to the Commissioner of Motor Vehicles of the termination of this contract of insurance prior to its termination.

"5. That the contract of insurance between defendant and plaintiff was not extended beyond the date and time stated therein by any provision of law or by any act or failure to act by defendant.

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover nothing of the defendant, and that the defendant be, and it is forever discharged of any and all liability to the plaintiff by reason of the matters and things alleged in the complaint and the defendant shall recover its costs from the plaintiff."

Plaintiff appealed and assigned errors.

*Daniel K. Edwards and Claude Bittle for plaintiff.*
*Smith, Moore, Smith, Schell & Hunter and Richmond G. Bernhardt, Jr., for defendant.*

MOORE, J.   There are two questions for decision in this case: (1) Was the coverage period of the policy of liability insurance, issued by defendant to plaintiff, extended by reason of the failure of defendant to comply with the notice of termination provisions of G.S. 20-279.22? (2) Was the coverage period extended by the terms of the notice of termination mailed by defendant to plaintiff on 9 February 1959?

The answer to these questions requires an examination of pertinent statutes.

The first enactment by the General Assembly relating to Financial responsibility of motorists is contained in Chapter 116, Public Laws of 1931 (G.S. 20-197 to G.S. 20-211). This 1931 Act was expressly repealed by the "Motor Vehicle Safety and Responsibility Act" of 1947. S.L. 1947, c. 1006 (G.S. 20-224 to G.S. 20-279).

The 1947 Act was revised and superseded by "The Motor Vehicle

Safety-Responsibility Act of 1953," which, as amended, is still in force. S.L. 1953, c. 1300 (G.S. 20-279.1 to G.S. 20-279.39). In addition the General Assembly has enacted "The Vehicle Financial Responsibility Act of 1957." S. L. 1957, c. 1393 (G.S. 20-309 to G.S. 20-319).

A brief analysis of the 1953 and 1957 Acts is necessary to an understanding of the controversy in this case. We consider and discuss here only those phases of these Acts which pertain to the factual situation here presented. As used in this opinion the word "Commissioner" means Commissioner of Motor Vehicles, and "Department" means Department of Motor Vehicles.

(a). The 1953 Act.

This Act applies to those persons whose driver's licenses have been suspended by reason of violations of motor vehicle statutes, failure to pay and discharge judgments for damages resulting from ownership or operation of motor vehicles, or failure to prove financial responsibility where damages have been occasioned by the ownership or operation of motor vehicles. It is provided that such persons, where they are otherwise entitled to restoration of driver's licenses, must prove financial responsibility before such licenses may be restored. The financial responsibility must then be maintained for two years. One method of proving and maintaining financial responsibility is to obtain automobile liability insurance as defined by, and in compliance with, G.S. 20-279.21. Upon delivery of a certificate (Form SR-22) by insurer to the Commissioner, showing that there is insurance coverage in accordance with the Act, driver's license may be issued to the applicant. The Act contains an Assigned Risk Plan under which a person who is required to file proof of financial responsibility and is unable to obtain the insurance through ordinary methods, may obtain coverage. G.S. 20-279.34. The Commissioner assigns the risk to an insurance company licensed to do business in the State, and the company must accept the risk. Such risk, under the rules of the Department, is designated a "certified assigned risk." An insurance policy issued in accordance with the requirements of the 1953 Act "shall not be cancelled or terminated until at least twenty (20) days after a notice of cancellation or termination of the insurance . . . shall be filed in the office of the Commissioner . . . ." G.S. 20-279.22. The Commissioner has the duty of administering the 1953 Act and is empowered to make rules and regulations for its administration and enforcement. The Commissioner handles the administration of this Act through the Driver's License Division of the Department.

(b). The 1957 Act.

This Act requires proof of financial responsibility by all motor vehicle owners who apply to the Department for North Carolina

registration certificates and plates. Financial responsibility may be shown by procurement of automobile liability insurance. Before a motor vehicle may be registered and registration plates obtained, a certificate of insurance coverage (FS-1) must be delivered by an insurer to the Commissioner. "The owner of each registered motor vehicle shall maintain proof of financial responsibility continuously throughout the period of registration . . . . When insurance with respect to any motor vehicle is terminated by cancellation or failure to renew, the owner shall forthwith surrender the registration certificate and plates of the vehicle to the department. . . ." The provisions of the 1953 Act "which pertain to the method of giving and maintaining proof of financial responsibility and which govern and define 'motor vehicle liability policy' and assigned risk plans shall apply to filing and maintaining proof of financial responsibility required by" the 1957 Act. G.S. 20-314. Under the 1957 Act a person, though his driver's license has not been suspended, may, if he is unable to obtain liability insurance through regular channels, apply for and procure such insurance through the Assigned Risk Plan. In such case the risk is denominated a "non-certified assigned risk." No insurance furnished under the provisions of the 1957 Act "shall be terminated by cancellation or failure to renew by the insurer until at least fifteen (15) days after mailing a notice of termination to the named insured . . . . Time of the effective date and hour of termination stated in the notice shall become the end of the policy period. . . . Upon the termination of insurance by cancellation or failure to renew, notice of such cancellation or termination shall be mailed by the insurer to the Commissioner . . . not later than fifteen (15) days following the effective date of such cancellation or other termination." G.S. 20-310. The Commissioner has the duty to administer the Act and is authorized to make rules and regulations for the administration and enforcement thereof. The Commissioner administers this Act through the Registration Division of the Department.

The 1953 Act is not in any respect repealed or modified by the 1957 Act. Both Acts are in full force and effect. Portions of the 1953 Act are incorporated in the 1957 Act by reference. Both Acts relate to the same subject — financial responsibility of motorists. "Statutes *in pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each, that is, all applicable laws on the same subject matter should be construed together so as to produce a harmonious body of legislation, if possible." *Blowing Rock v. Gregorie,* 243 N.C. 364, 371, 90 S.E. 2d 898; *Justice v. Scheidt,* 252 N.C. 361, 363, 113 S.E. 2d 709.

The 1953 Act applies to a limited class of motorists — those whose

driver's licenses have been suspended. These motorists must show financial responsibility as a condition precedent to restoration of their driver's licenses. The 1957 Act applies to an unlimited class — all motor vehicle owners. Before obtaining periodic registration certificates and plates for vehicles, they must prove financial responsibility. One Act relates to restoration of driver's license, the other to motor vehicle registration. Insofar as possible the two Acts are administered by the Commissioner separately — the 1953 Act through the Driver's License Division, the 1957 Act through the Registration Division.

The Assigned Risk Plan handles applications of persons from either or both classes where the required insurance cannot be obtained through regular channels. But the assigned risks are handled differently for the two classes of persons. Persons affected by the 1953 Act must obtain SR-22 certificates and the risks are designated "certified assigned risks." Under the 1957 Act motor vehicle owners using the Assigned Risk Plan must furnish FS-1 certificates and the risks are denominated "non-certified assigned risks."

Plaintiff in the case at bar is not of the class to which the 1953 Act applies. His driver's license was not suspended. His insurer furnished an FS-1 certificate and his assigned insurance policy was designated "non-certified assigned risk." The Department issued him registration certificate and plate for his automobile. The procedure was in accordance with the 1957 Act, and properly so.

The first question for decision is whether or not defendant insurer was required to give the notice prescribed by G.S. 20-279.22 before the period of coverage of plaintiff's policy of insurance could be terminated. This section (part of the 1953 Act) provides that when an insurer has certified a policy under G.S. 20-279.19 or G.S. 20-279.20 it may not be terminated until at least twenty days after notice of termination has been filed in the office of the Commissioner.

Plaintiff contends that G.S. 20-314 incorporated G.S. 20-279.22 in the 1957 Act. G.S. 20-314 stipulates that the provisions of the 1953 Act "which pertain to the method of giving and *maintaining* proof of financial responsibility and which govern and define 'motor vehicle liability policy' and assigned risk plans shall apply to filing and *maintaining* proof of financial responsibility required" by the 1957 Act. (Emphasis added) In other words the insurance policies and insurers' certificates required by both Acts are defined by the 1953 Act.

Plaintiff argues that the notice required by G.S. 20-279.22 is a reasonable and necessary adjunct to the 1957 Act, that this section is applicable to both insurer and insured and would prevent an insured from cancelling his policy before proper notice had been given, and

that this section does not conflict with the notice provisions of the 1957 Act, and would tend to assure continuous coverage.

It is true that G.S. 20-279.22 pertains generally to "maintaining proof of financial responsibility" and, if the 1957 Act had no provisions for notice of termination of insurance coverage, it might well be considered a part of the 1957 Act. However, the 1957 Act has separate, distinct and specific provisions for notice of termination. It is our opinion that G.S. 20-279.22 has no application to insurance policies issued pursuant to the 1957 Act, and therefore no application to the policy involved in this case.

Under the 1957 Act (specifically G.S. 20-310) no policy may be cancelled by insurer until fifteen days after mailing a notice of cancellation to insured; and notice of cancellation shall be mailed to Commissioner within fifteen days following the effective date of cancellation. In our opinion the Legislature did not intend that there should be two notices to the Commissioner — a notice twenty days before termination and another within fifteen days after termination. The 1953 Act deals with a class that poses a greater risk on the highways than motor vehicle owners generally. Therefore, to better assure continuous coverage, the General Assembly provided for notice to Commissioner as a condition precedent to cancellation of insurance policies of the former class. Furthermore, it is contemplated that insurance coverage under the 1953 Act be maintained for only two years, provided there has been no conviction or forfeiture of bond requiring further suspension of license during the two-year period; and it is contemplated that the two-year coverage be continuous and that there be no termination of coverage without the prior knowledge of the Commissioner. It is true that the provisions for notice of termination under the 1957 Act (G.S. 20-310) do create the possibility of an hiatus of fifteen days or more in insurance coverage. The Legislature undertook to bridge the gap by making it a misdemeanor for an owner to fail to surrender forthwith his registration certificate and plate upon cancellation or failure to renew his policy. However, the possibility of gaps between periods of coverage still remains. We believe that the Legislature was advertent to this possibility and accepted it as the lesser of two hardships. The difference in the types of persons generally to which the two Acts apply should be kept in mind. The great majority of motor vehicle owners have, even before the passage of the Act, maintained good safety records and financial responsibility. If a notice such as is required under the 1953 Act was imposed under the 1957 Act, it would either increase all liability insurance rates or would subject all policy holders to cancellation of their coverage on failure to prepay premiums more than twenty

days prior to the end of the extant coverage period. In other words, it would change the manner of conducting insurance business and in many instances engender ill feelings on the part of policyholders toward their insurers and result in frequent change of insurance carriers. The course chosen by the Legislature seems to have been the more reasonable. In any event the 1957 Act will be null and void from and after 15 May 1961 unless re-enacted. G.S. 20-319. If the law is re-enacted the General Assembly may desire to reconsider the provision as to notice of termination in the light of the Department's experience. The rules and practice of the Commissioner on this question of notice are in accord with the opinion we have expressed. It is clear that the insurer in the instant case gave the Commissioner notice within fifteen days after the date of termination in compliance with the 1957 Act. G.S. 20-279.22 has no application, and notice thereunder was not required.

This brings us to the final question, as to whether the following provision of G.S. 20-310 applies to the policy in the instant case: "No contract of insurance or renewal thereof shall be terminated by cancellation or failure to renew *by the insurer* until at least fifteen (15) days after mailing a notice of termination to the named insured . . . . Time of the effective date and hour of termination stated in the notice shall become the end of the policy period." (Emphasis added.)

Defendant admits that it mailed to plaintiff on 9 February 1959 a notice of termination in which it is stated: "Effective Date and Hour of Termination: February 24, 1959, at 12:01 A. M., Standard Time." If, under the circumstances of this case, this notice was required, there was insurance coverage at the time of the accident because of the date of termination specified.

Defendant contends that the sending of the notice and the date of termination inserted were clerical errors, no notice to the insured was required by the terms of G.S. 20-310, and the fact that the notice was sent imposes no liability in this case. Defendant insists that the termination was not an act of the *insurer*, but was an act of the insured in failing and refusing to accept defendant's offer to renew the policy. Defendant points out that the pertinent provision of the statute applies only to "cancellation or failure to renew by the *insurer.*"

Pursuant to the rules and regulations of the Assigned Risk Plan, defendant by mail advised plaintiff in January 1959 that the policy would expire 22 February 1959, and that in order to renew it he must pay the premium in advance by 5 February 1959, gave the amount of premium, and stated that if premium had not been paid

by 5 February it would be assumed he did not desire coverage. It also advised that if premium was not paid by 5 February 1959 plaintiff would have to apply through the Assigned Risk Plan if he desired further insurance coverage. Plaintiff did not pay the renewal premium on the date specified and did not tender the premium at any later date. He applied through the Assigned Risk Plan for further insurance, but the policy thus obtained (from another insurer) was not in effect at the time of the accident in question.

Defendant's contentions with respect to the interpretation of G.S. 20-310 are in accord with the rules and regulations promulgated by the Commissioner. The Commissioner's handbook of rules entitled "Insurance Handbook (Rev. Nov. 15, 1958): The 1957 Vehicle Financial Responsibility Law" has the following instructions and interpretations:

> "Advance notice to the insured must be given before termination is possible. This is required in every instance (flat cancellations, mid-term cancellations and non-renewals) where the termination is by the *insurer*, and that includes switching of companies by agents. It is only when the insured cancels or fails to renew that there is no obligation on the part of the insurer to give advance notice." S. IX (A), p. 5.

> "Upon the termination of insurance notice of such termination shall be sent by the insurer to the Financial Security Section, Department of Motor Vehicles *not later* than 15 days following the effective date of such termination. This includes flat cancellations, mid-term cancellations, and non-renewals. It makes no difference whether the termination is at the company's or insured's request." S. IX (B), p. 6.

The interpretation by the department responsible for the administration of a legislative act is helpful to a court when called upon to construe legislative language. *In re Application for Reassignment,* 247 N.C. 413, 420, 101 S.E. 2d 359. The construction placed upon legislation by the officer charged with administration thereof will be given due consideration by the courts, although such construction is not controlling. If there should be a conflict between administrative interpretation and the interpretation of the courts, the latter will prevail. *Campbell v. Currie,* 251 N.C. 329, 333, 111 S.E. 2d 319.

Our 1957 Act was apparently copied from the New York Law with slight modifications. On the matter under discussion the New York statute provides: "No contract of insurance or renewal thereof for which a certificate of insurance has been filed with the Commissioner shall be terminated by cancellation by the insurer or failure to renew

by the insurer until at least twenty days after mailing to the named insured at the address shown on the policy of notice of termination, except where the cancellation is for nonpayment of premium in which case ten days notice of cancellation by the insurer shall be sufficient. Time of the effective date and hour of termination stated in the notice shall become the end of the policy period . . . ." New York C.L.S., Vehicle and Traffic Law, s. 313.

We perceive no fundamental difference, with respect to the matter under consideration, between G.S. 20-310 and the New York provision, except for time elements. The Supreme Court of New York has interpreted this provision in two cases.

In *Connecticut Fire Insurance Company v. Williams*, 194 N.Y.S. 2d 952 (1959), it was held that there was a unilateral failure to renew policy of insurance by the insurer and the insurer should have notified the insured of termination. Plaintiff issued to defendant Williams an automobile liability policy for the period from 1 January 1957 to 26 January 1958. Plaintiff sent a renewal policy to its agent in January 1958. Agent could not find defendant Williams and returned the renewal policy to plaintiff marked "not taken, ret. prem" (meaning insured did not want policy renewed). No notice of termination was mailed to defendant and he was never personally contacted. Defendant's automobile was involved in an accident resulting in injuries to third parties on 3 March 1958. Plaintiff sued for declaratory judgment to determine its liability, if any. The Court said:

". . . The court below held that there was a unilateral failure to renew by the appellant so that its failure to send a notice of termination to Williams under section 93-c of the Vehicle and Traffic Law effectuated a continuation of the insurance. . . . Section 93-c provides that no contract of insurance or renewal thereof shall be terminated by failure to renew by the insurer until 20 days after a notice of termination is mailed to the insured. It is admitted that no such notice was mailed to Williams but the appellant argues that there was not here a failure to renew by the insurer. As the appellant points out, renewal is a bilateral transaction involving both offer and acceptance. However, no offer was made to Williams since Dennis never contacted him concerning the renewal and as the court below pointed out there were reliable means available which were not used. Although a perfectly valid reason for failing to renew was available, the non-payment of premiums, this is not the issue here and it cannot be used to obscure the fact that it was the appellant insurer who was failing to renew the policy."

In *Caristi v. Home Indemnity Company,* 202 N.Y.S. 2d 340 (1960), there was an undetermined question of fact. There was evidence that insurance broker phoned plaintiff and spoke to plaintiff's wife about acceptance of a renewal policy of liability insurance, and that she stated the policy could be gotten cheaper elsewhere. "There is also an averral that this rejection was ratified by plaintiff personally." Plaintiff apparently denied this version of the matter. As to whether defendant was obligated by the statute to give notice of termination, the Court declared:

> "There is a question of fact as to whether the renewal was rejected and coverage terminated at plaintiff's behest or whether the policy was cancelled by the broker for nonpayment of premium without plaintiff's consent. If the fact is that the policy was cancelled for nonpayment of premium rather than by rejection by plaintiff, then there was a noncompliance with the statute and the ruling in *Connecticut Fire Insurance Co. v. Williams, supra,* would be applicable."

Many States have compulsory automobile liability insurance laws. But so far as our research discloses the question with which we are here concerned has arisen in no litigation except the two New York cases above.

The question in the instant case comes to this: Did plaintiff reject a renewal policy or did defendant terminate the policy coverage? It seems clear that renewal was rejected by plaintiff. He was offered a renewal upon the condition that he pay the premium by 5 February 1959. This was in accordance with the rules of the Assigned Risk Plan. He was told that unless he paid the premium by that date he would be required to apply to the Assigned Risk Plan if he desired further insurance. He did not pay the premium on the date specified and did not offer to pay it on any other date. Instead, he applied to the Assigned Risk Plan for insurance.

Under these conditions, we hold that there was no failure to renew on the part of defendant and it was under no obligation to give plaintiff further notice of termination under the provisions of G.S. 20-310. Therefore, the coverage period of the policy ended at 12:01 A. M., 22 February 1959.

The judgment below is

Affirmed.