LEE PERKINS v. AMERICAN MUTUAL FIRE INSURANCE COMPANY.

(Filed 14 June 1968.)

**1. Insurance §§ 95, 108—**

Where the insurer fails to give the insured fifteen days notice of the insurer's termination of a policy of automobile liability insurance, the notice to contain, in addition to the date and hour of termination, a warning that proof of financial responsibility must be maintained continuously throughout the registration period and that operation of a motor vehicle without such proof is a misdemeanor, the policy continues in force and effect notwithstanding plaintiff's failure to pay in full the required premium. G.S. 20-310(a).

**2. Insurance § 80—**

The manifest purpose of the 1957 Vehicle Responsibility Act is to provide protection to persons injured or damaged by the negligent operation of a motor vehicle by requiring that every motorist maintain continuously proof of financial responsibility.

**3. Insurance § 95—**

The obvious purpose of the notice and warning required by G.S. 20-310(a) is to confront the insured with the fact that operation of a car without maintaining proof of financial responsibility is a misdemeanor.

**4. Insurance §§ 81, 95— Assigned Risk insured met insurer's offer of renewal, and policy continues in effect.**

Where, more than 45 days prior to the expiration date of a policy of automobile liability insurance issued pursuant to the Assigned Risk Plan, the insurer sends the insured notice that a renewal policy will be issued upon receipt of the renewal premium at least 22 days prior to the expiration date of the policy, the insurer is obligated under the Plan to renew the policy upon timely payment by the insured of the required premium; the contention of the insurer in this case that its offer of renewal was rejected by insured, thereby rendering unnecessary the 15 days notice of

termination required by G.S. 20-310, is meritless when the findings indicate the insured's desire to renew the policy.

**5. Insurance § 105;   Damages § 12—**

In insured's action against the insurer to recover under an automobile liability insurance policy expenses arising out of an automobile collision, exclusion of evidence as to insured's loss of wages on account of revocation of driver's license is proper in the absence of allegations in the complaint as to such loss.

**6. Pleadings § 32—**

The trial court in its discretion may deny plaintiff's motion to amend the complaint.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *McLean, J.,* January 9, 1967 Civil Session of GASTON, docketed and argued as No. 202 at Fall Term 1967.

Plaintiff having incurred legal liability and expenses growing out of an automobile collision, instituted this action to recover under a liability insurance policy issued to him by defendant.

Waiving jury trial, the parties agreed "that the court might hear the evidence, make findings of fact and conclusions of law and enter judgment." After hearing the evidence, the court made, and set forth in the judgment, the following findings of fact:

"1.   On February 1, 1962, the plaintiff, Lee Perkins, went to the office of the Terry Insurance Agency in Gastonia, North Carolina and applied for the issuance of an automobile liability insurance policy.

"2.   The plaintiff had been unable to secure automobile liability insurance through regular channels.

"3.   On behalf of the plaintiff, Terry Insurance Agency sent an application to the North Carolina Assigned Risk Plan in Raleigh, North Carolina.

"4.   The risk was duly assigned to the defendant, American Mutual Fire Insurance Company, and the liability insurance policy was issued by the defendant to the plaintiff under the North Carolina Assigned Risk Plan pursuant to the Vehicle Responsibility Act of 1957 as stipulated by the parties.

"5.   Terry Insurance Agency was the producer of record.

"6.   The insurance policy bearing policy number AC 455127 was effective for the period beginning February 7, 1962 and ending at 12:01 A.M., February 7, 1963.

"7. The premium for the policy period ending February 7, 1963 was $72.00 and paid by the plaintiff.

"8. Terry Insurance Agency was not an agent of the defendant, but the policy of insurance was issued through it as producer of record.

"9. Prior to January 7, 1963, pursuant to rules of the Assigned Risk Plan, the defendant sent Perkins and Terry Insurance Agency a notice advising that in order to renew the policy, plaintiff would have to pay the renewal premium twenty-two (22) days in advance of the expiration date of the policy, which notice was dated December 5, 1962·showing the total policy premium for renewal to be $55.00. The plaintiff received a copy of the notice dated December 5, 1962 prior to January 7, 1963.

"10. In addition, plaintiff received a notice from the Terry Insurance Agency prior to January 7, 1963 that he would have to pay the renewal premium on the policy thirty (30) days in advance in order to keep the policy in effect under the Assigned Risk Plan.

"11. The notice received by the plaintiff from the Terry Insurance Agency was not dated and is in evidence as defendant's Exhibit No. 2, which notice contained provision that the premium for renewal on the policy would be due on January 7, 1963 and to avoid having to turn in his license plates to be sure to see the Terry Insurance Agency by January 7, 1963.

"12. Plaintiff went to the Terry Insurance Agency on January 7, 1963 and was advised by the agency that the premium for renewal of the policy would have to be paid on January 7, 1963 in order to keep the policy in force.

"13. The premium for renewal was $55.00.

"14. The plaintiff paid the sum of $15.00 to the Terry Insurance Agency as a down-payment on the premium.

"15. On January 7, 1963, Terry Insurance Agency forwarded the sum of $43.00 to the defendant as renewal premium and requested the defendant to advise the agency whether the renewal premium would be $43.00 or $55.00.

"16. Between January 7, 1963 and January 11, 1963, the defendant notified Terry Insurance Agency to forward additional premium of $12.00 so renewal could be processed, defendant's Exhibit No. 6.

"17. On January 11, 1963, Terry Insurance Agency mailed a notice to the plaintiff at 20 Boundary Street, Belmont, North Carolina that defendant had informed the agency that renewal premium would be $55.00 rather than $43.00 and that the amount of $12.00 must be paid immediately so that renewal may be issued.

"18. That two or three days after January 11, 1963, plaintiff called Terry Insurance Agency and was advised by Mrs. Betty Barnhill that an additional premium of $12.00 must be paid for renewal of the policy. Plaintiff did not pay the additional premium of $12.00 prior to February 7, 1963 and the additional sum of $12.00 was never received by the defendant. The additional sum of $12.00 was paid by the plaintiff to Terry Insurance Agency after February 18, 1963.

"19. The sum of $43.00 was returned by the defendant to the Terry Insurance Agency on February 22 or February 23, 1963.

"20. A portion of the money paid by the plaintiff to the Terry Insurance Agency was returned to the plaintiff by the Terry Insurance Agency several months after February 18, 1963.

"21. On February 18, 1963, prior to the time of the accident on February 18, 1963, the plaintiff received a notice at his home at 20 Boundary Street, Belmont, North Carolina, from the defendant that his policy of insurance was terminated as of 12:01 A.M. on February 7, 1963. The plaintiff did not read the notice until February 19, 1963. Plaintiff's Exhibit No. 1. Said notice provided that policy expired at 12:01 A.M. on Friday, February 7, 1963 and FS-4 and SR-26 issued.

"22. That on or about February 18, 1963, the plaintiff received a notice from the defendant dated February 14, 1963, executed by Robert G. Dillard on behalf of the defendant, and posted in the United States Mail on February 14, 1963, advising that the policy expired at 12:01 A.M. February 7, 1963 and that proof of financial responsibility must be continuously maintained throughout the registration period and operation of a motor vehicle without maintaining such proof of financial responsibility is a misdemeanor.

"23. On February 14, 1963, and within fifteen (15) days after February 7, 1963, defendant prepared and sent to Commissioner of Motor Vehicles in Raleigh, North Carolina, notice that insurance had terminated on February 7, 1963. The notice was on Form FS-4 North Carolina Notice of Termination.

"24. The plaintiff reported the accident to the Terry Insurance Agency on February 21, 1963.

"25. The complaint makes no allegation with respect to failure of the defendant to give notice of termination to the North Carolina Department of Motor Vehicles.

"26. Plaintiff was involved in an accident on February 18, 1963 from which three lawsuits arose entitled as follows: *'Lee A. Perkins vs. David Sisk'* resulting in a jury verdict of negligence and contributory negligence. *'Novella Sisk vs. Lee A. Perkins, Orig. Def. and David Sisk, Add. Def.'* resulting in an appeal to the Supreme Court of North Carolina. *'James McGinnis vs. David Sisk and Lee A. Perkins'* in which no judgment was rendered against Perkins.

"27. That a consent judgment appears of record against the plaintiff in the office of the Clerk of Superior Court of Gaston County, North Carolina in the sum of $2,500.00, which has not been paid.

"28. *The defendant had the right to rely on the termination of the insurance contract by the plaintiff for failure of the plaintiff to pay the renewal premium and the defendant did in fact rely on plaintiff's failure to pay the renewal premium.*

"29. Plaintiff incurred attorney fees in defense of the actions filed against him.

"30. Plaintiff instituted this action for the sum of $2,500.00 and attorney fees. The complaint alleges the plaintiff paid attorney fees in excess of $500.00 and the testimony of the plaintiff was that he had paid the sum of $750.00 in attorney fees and owed an additional sum of $1,400.00 for attorney fees in defense of the suit filed against him as a result of the accident.

"31. That the defendant was notified of the actions pending against the plaintiff and the defendant refused to defend on the grounds that there was no coverage under the policy."

Upon these findings of fact, the court concluded the insurance coverage provided by the policy expired on February 7, 1963, at 12:01 a.m., on account of plaintiff's failure to pay the renewal premium.

Judgment was entered providing that "the plaintiff have and recover nothing of the defendant and that the defendant be and it is forever discharged of any and all liability to the plaintiff by reason of the matters and things alleged in the complaint and the costs taxed against the plaintiff."

Plaintiff excepted and appealed, basing assignments of error on his exceptions to the (italicized) Finding of Fact No. 28 and to each of the court's conclusions of law.

*Mullen, Holland & Harrell and Thomas H. Morgan for plaintiff appellant.*
*Hollowell, Stott & Hollowell for defendant appellee.*

BOBBITT, J.  The principal question presented by plaintiff's assignments of error is whether defendant's liability under the policy terminated on February 7, 1963, at 12:01 a.m. on account of plaintiff's failure to pay in full the renewal premium. In our view, the holding designated Finding of Fact No. 28 is in substance a conclusion of law and is so treated.

The policy was issued February 7, 1962, and provided the *compulsory* coverage then required by the Vehicle Financial Responsibility Act of 1957 (Session Laws of 1957, Chapter 1393) as a prerequisite to the registration of a motor vehicle by the owner thereof. *Swain v. Insurance Co.,* 253 N.C. 120, 116 S.E. 2d 482.

With reference to termination of coverage, Section 2 of said 1957 Act, later codified as G.S. 20-310 in the 1959 and 1961 Cumulative Supplements to the General Statutes, provided:

"No contract of insurance or renewal thereof shall be terminated by cancellation or failure to renew by the insurer until at least fifteen (15) days after mailing a notice of termination to the named insured at the address shown on the policy. Time of the effective date and hour of termination stated in the notice shall become the end of the policy period. Every such notice of termination for any cause whatsoever sent to the insured shall include on the face of the notice a statement that proof of financial responsibility is required to be maintained continuously throughout the registration period and that operation of a motor vehicle without maintaining such proof of financial responsibility is a misdemeanor. Upon the termination of insurance by cancellation or failure to renew, notice of such cancellation or termination shall be mailed by the insurer to the Commissioner of Motor Vehicles not later than fifteen (15) days following the effective date of such cancellation or other termination."

The quoted statutory provision was in force at all times pertinent to decision herein. It is noted the statute (G.S. 20-310) was subsequently amended (1) by Chapter 842, Session Laws of 1963, applicable to policies written or renewed after September 1, 1963, and (2) by Chapter 964, Session Laws of 1963, effective October 1, 1963, and (3) by Chapter 1135, Session Laws of 1965, effective July 1, 1965, and (4) by Chapter 857, Session Laws of 1967, effective June 21, 1967. As amended, the statutes are brought forward and codified as G.S. 20-310(a), (b) and (c) in the 1965 Replacement and

1967 Cumulative Supplement. However, the said amendments have no application to the present case.

Defendant contends it offered to renew the policy upon payment by plaintiff of the required ($55.00) premium; that the policy was not terminated *by it* but by plaintiff's failure to pay the premium; and that it was not required to give plaintiff a notice containing the provision, including the warning, set forth in the quoted statute.

No notice given by defendant to plaintiff set forth on the face thereof, in addition to the date and hour of termination, "a statement that proof of financial responsibility is required to be maintained continuously throughout the registration period and that operation of a motor vehicle without maintaining such proof of financial responsibility is a misdemeanor." Where applicable, the requirement of the quoted statute that the notice contained the provisions, including the warning, set forth therein, is mandatory. *Crisp v. Insurance Co.,* 256 N.C. 408, 124 S.E. 2d 149; *Levinson v. Indemnity Co.,* 258 N.C. 672, 129 S.E. 2d 297. The question is whether, in the factual situation under consideration, a notice containing the provisions, including the warning, set forth in the quoted statute, was prerequisite to termination for failure to renew on account of nonpayment of premium.

The manifest purpose of said 1957 Act was to provide protection, within the required limits, to persons injured or damaged by the negligent operation of a motor vehicle. *Swain v. Insurance Co., supra; Nixon v. Insurance Co.,* 255 N.C. 106, 120 S.E. 2d 430; *Lane v. Insurance Co.,* 258 N.C. 318, 128 S.E. 2d 398. The quoted statute must be considered in context with other provisions of said 1957 Act. The primary intent of the General Assembly was that every motorist maintain continuously proof of financial responsibility; and the obvious purpose of the notice required by the quoted statute was to confront the insured with the fact that operation of a car without maintaining proof of financial responsibility was a misdemeanor. The quoted statute relates to the notice and warning that must be given the policyholder in the event his policy is terminated by the insurer, whether the termination is by cancellation or by failure to renew. We are of the opinion, and so hold, that the defendant was required to give such notice and warning, and that in the absence of such notice and warning the policy continued in force and effect notwithstanding plaintiff's failure to pay in full the required premium.

As noted in *Faizan v. Insurance Co.,* 254 N.C. 47, 118 S.E. 2d 303, the provisions of the quoted statute and of § 313 of the Ve-

hicle and Traffic Law of New York, are similar in all respects pertinent to decision in the present case. See McKinney's Consolidated Laws of New York, Book 62A, pp. 106-107. The New York statute provides, *inter alia,* that "(n)o contract of insurance or renewal thereof . . . shall be terminated by cancellation by the insurer or failure to renew by the insurer" until notice is given as prescribed; and that "(e)very such notice of termination for any such cause whatsoever sent to the insured shall include . . . a statement that proof of financial security is required to be maintained continuously throughout the registration period . . ." (Note: This statute was formerly codified as Section 93-c of the Vehicle and Traffic Law of New York.)

A brief reference to the two New York decisions discussed in *Faizan,* namely, *Connecticut Fire Insurance Company v. Williams,* 194 N.Y.S. 2d 952 (1959) and *Caristi v. Home Indemnity Company, New York,* 202 N.Y.S. 2d 340 (1960), seems appropriate. In *Williams,* the Court said: "It was recently held in *Teeter v. Allstate Ins. Co.,* 9 A.D. 2d 176, 181, 192 N.Y.S. 2d 610, 616, that cancellation can only be accomplished by giving the insured notice under Section 93-c . . ." No notice of termination for failure to renew was mailed by the insurer to the insured. The Court concluded: "The court below correctly determined that there was here a unilateral failure to renew by the insurer and since section 93-c was not complied with, the insurance continued in effect." In *Caristi,* it was held the ruling in *Williams* would apply *unless* it was found the insured had *rejected* a renewal policy.

Later New York decisions, to wit, *Mong v. Allstate Insurance Company,* 223 N.Y.S. 2d 218 (1962), and *La Barre v. Nationwide Mutual Insurance Company,* 227 N.Y.S. 2d 632 (1962), and *Monette v. Nationwide Mutual Insurance Co.,* 230 N.Y.S. 2d 939 (1962), involve factual situations substantially similar to that under consideration in the present case. In each of these cases, the court rejected the contention that compliance by the insurer with Section 313 was unnecessary. In each instance, it was held the policy period extended beyond the expiration date stated therein and that the policy was in force when the accident occurred. The basis of the decisions is succinctly and accurately stated in this headnote in *Mong:* "Automobile insurance termination notice which did not contain statement that failure to maintain proof of financial security is misdemeanor . was ineffective to cancel insurance for nonpayment of insurance premium, under statute requiring every notice of termination to contain such a statement. Vehicle and Traffic Law, § 313."

It is noted that *Mong, La Barre* and *Monette,* and also *Williams,*

quote, in whole or in part, the following from *Teeter v. Allstate Insurance Company,* 192 N.Y.S. 2d 610, 616, affd. 212 N.Y.S. 2d 71:

"Once a certificate of insurance . . . has been issued by the insurance company and filed with the Commissioner, the contract of insurance ceases to be a private contract between the parties. A supervening public interest then attaches and restricts the rights of the parties in accordance with the statutory provisions. Many common-law contractual rights are restricted by the statute. Thus, for example, there is, at common law, the absolute right to refuse to renew a policy upon the expiration of its term but this is restricted by the statute so that the policy continues in force after its expiration date without a renewal, unless and until notice of termination is given in accordance with the statute."

With reference to the ground of decision, this excerpt from the opinion in *Mong* is pertinent: "The notice which appellant claims to have mailed to Drone does not contain this statement required by section 93-c. The requirement that the notice should inform the insured that proof of financial security is required to be maintained and that failure to maintain it is a misdemeanor, is essential to carrying out the purposes of the act stated in subdivision 2 of section 93 thereof by assuring as far as possible that no uninsured automobile is operated in this state."

The policy here involved was issued by defendant to plaintiff under the North Carolina Automobile Assigned Risk Plan promulgated by the Commissioner of Insurance pursuant to authority conferred by G.S. 20-279.34. Provisions thereof then in effect are noted. Section 13 provided in part that "(a) risk shall be assigned to a designated company for a period of 3 consecutive years." Section 14B provided in part: "At least 45 days prior to the inception date of the first and second renewal policies the designated company shall notify the applicant that (1) a renewal policy will be issued provided the renewal premium is received at least 22 days prior to the inception date of such policy, or (2) A renewal policy will not be issued for the reason that the applicant is not entitled to insurance under the Plan."

Nothing else appearing, defendant was obligated under the Plan to renew the policy upon timely payment by plaintiff of the required premium. The only notice by defendant to plaintiff prior to February 7, 1963, was dated December 5, 1962. It was received by plaintiff prior to January 7, 1963, presumably forty-five days or more prior to February 7, 1963. It gave notice the renewal premium ($55.00) had to be paid twenty-two days in advance of February 7, 1963. Defendant had ample opportunity to give the fifteen day

notice required by the quoted statute before February 7, 1963, the expiration date stated in the policy.

The ground of decision in *Faizan* was that the insured *rejected* the defendant's offer to renew the policy. In *Faizan*, notices given by the defendant to the plaintiff, although not in full compliance with the provisions of the quoted statute, were sufficient to advise the insured plainly of the consequences of his failure to renew. The insured made no response to the insurer's notices. Instead, he "applied through the Assigned Risk Plan for further insurance, but the policy thus obtained (from another insurer) was not in effect at the time of the accident in question."

In the present action, there is no evidence or finding that plaintiff *rejected* defendant's offer to renew upon payment of a premium of $55.00. Rather, it appears uncertainty had arisen whether the proper premium was $43.00 or $55.00. While the court found $55.00 was the correct amount of the premium, the findings indicate a definite desire on the part of plaintiff to renew the policy.

We have not overlooked the assignments of error based on plaintiff's Exceptions Nos. 1 and 2. Exception No. 1 relates to the court's exclusion of evidence as to loss of wages on account of revocation of driver's license. The exception is without merit. The complaint contains no allegation as to such loss. Exception No. 2 relates to the refusal of the court to allow plaintiff to amend the complaint. This exception is without merit. It was permissible for the judge in his discretion to deny such motion.

For the reasons stated herein, the judgment of the court below is reversed; and the cause is remanded with direction that plaintiff be awarded judgment for such amount (the present findings of fact being insufficient with reference thereto) as he may establish in further proceedings.

Reversed and remanded.

HUSKINS, J., took no part in the consideration or decision of this case.