NATIONWIDE MUTUAL INSURANCE COMPANY v. JOHN HENRY COTTEN, WILLIAM E. DIGGS, EVERLENA M. DIGGS, AND ALLSTATE INSURANCE COMPANY

No. 7110SC275

(Filed 18 August 1971)

1. **Insurance § 95— assigned risk policy — failure to pay renewal premium — cancellation of policy**

    Where there was no evidence that the insured rejected the insurer's offer to renew an assigned risk policy, failure of the insured to pay the renewal premium within the time specified in the premium due notice and offer to renew did not constitute cancellation of the policy by the insured.

2. **Insurance § 95— assigned risk insurance — cancellation by insurer — failure to give timely notice to Motor Vehicles Department**

    Insurer's attempted cancellation of an assigned risk policy for nonpayment of premium was ineffective where the insurer notified the Department of Motor Vehicles on 13 March 1968 that the insurance "terminates effective 12:01 a.m. 3-8-68," since G.S. 20-309(e) requires the insurer to give such notice 15 days prior to the effective date of cancellation, and the policy remained in effect when insured was involved in an accident on 26 May 1968.

APPEAL by plaintiff from *Clark, Judge,* January 1971 Regular Civil Session, WAKE Superior Court.

On 8 March 1966, Nationwide Mutual Insurance Company (Nationwide) issued its policy No. 61-679-575 to John Henry Cotten (Cotten) for a one-year period. The premium was paid, and the policy renewed for the second year by the payment of another premium by the insured. The policy was an assigned risk policy. On 21 January 1968, 45 days prior to 8 March 1968, Nationwide mailed to Cotten a premium due notice and offered to renew the policy for another year upon payment of premium. The notice gave the policy number, the termination date (8 March 1968), the amount of the premium due in order to renew ($77.80), and the payment date (14 February 1968). It contained the following language: "PREMIUM NOTICE FOR ASSIGNED RISK POLICY—Your automobile policy terminates on the date shown below. You may renew your policy for another year by paying the PREMIUM before the PAYMENT DATE." This notice was received by Cotten.

Cotten did not pay the premium necessary for renewal, and on 14 February 1968, Nationwide mailed him an "Assigned Risk

Termination Notice" as follows: "ASSIGNED RISK TERMINATION NOTICE—This is notice your Automobile Liability Policy expires at 12:01 A.M. on the TERMINATION DATE shown below. The Extension Certificate Endorsement 446-1B recently mailed is, therefore, null and void. IMPORTANT SEE OTHER SIDE." The notice recited the policy number, the termination date (8 March 1968) and the amount of premium ($77.80). In the lower right hand corner appeared the following: "NORTH CAROLINA POLICY-HOLDERS ONLY: Financial responsibility is required to be maintained continuously throughout the registration period. The operation of a motor vehicle without maintaining financial responsibility is a misdemeanor, the penalty for which is loss of registration plate for 60 days and a fine or imprisonment in the discretion of the court." It was stipulated that Cotten received this notice and that a copy was received by the producer of record.

On 13 March 1968 Nationwide delivered to the Department of Motor Vehicles a form "FS-4 NORTH CAROLINA NOTICE OF TERMINATION" advising that the insurance of John Henry Cotten "terminates effective at 12:01 A.M. 3-8-68." The notice carried the policy number, 61-679-575 and showed also "date FS-4 prepared 3-13-68."

On 26 May 1968 the vehicle owned and operated by Cotten was involved in a collision, and the defendants, William E. Diggs and Everlena Diggs, brought separate actions against Cotten to recover for property damage and personal injuries allegedly sustained as the result of Cotten's negligence.

This action was brought by Nationwide asking that an injunction issue restraining the prosecution of the actions and that a declaratory judgment be entered adjudicating that Nationwide has no coverage for or obligation to defend Cotten and that defendant Allstate Insurance Company afford coverage under its Uninsured Motorist Insurance policy.

The matter was heard upon stipulated facts which are of record and were incorporated by reference in the judgment entered which adjudged the policy issued to Cotten by Nationwide to be in full force and effect at the time of the accident on 26 May 1968. To the signing and entry of the order, Nationwide excepted and appealed.

*Smith, Anderson, Dorsett, Blount and Ragsdale, by Willis Smith, Jr., and Robert R. Gardner, for plaintiff appellant.*

*Cockman, Alvis and Aldridge, by Jerry S. Alvis, for defendant appellee, Allstate Insurance Company.*

. MORRIS, Judge.

Plaintiff's exceptions and assignments of error raise two questions: (1) Was the policy issued to Cotten by Nationwide cancelled by the insured, as Nationwide contends, or by the insurer, as Allstate contends? and (2) If the policy was cancelled by Nationwide, was its noncompliance with G.S. 20-309 (e) cured by its notifying the Department of Motor Vehicles of cancellation on 13 March 1968?

Plaintiff concedes that it did not comply with the provisions of G.S. 20-309 (e) : "No insurance policy provided in subsection (d) may be terminated by cancellation or otherwise by the insurer without having given the North Carolina Motor Vehicles Department notice of such cancellation fifteen (15) days prior to effective date of cancellation. . . . " But plaintiff contends that it was not required to comply because the cancellation of the policy was effected by the insured, Cotten, and that in such event the statute required only immediate notification by the insurer to the Motor Vehicles Department. To sustain its position, plaintiff relies primarily on *Faizan v. Insurance Co.,* 254 N.C. 47, 118 S.E. 2d 303 (1961). There Faizan applied for insurance and his risk was assigned to defendant. Defendant issued its policy effective 22 February 1958, and the premium was paid. In January 1959, pursuant to the rules of the Assigned Risk Plan, defendant sent plaintiff a notice that the policy would expire on 22 February 1959 and that in order to renew it plaintiff would have to pay renewal premium in advance by 5 February 1959, the date designated as premium due date. The notice stated the amount of premium due and advised that defendant would renew the policy if payment of premium was received by the premium due date; otherwise, defendant would assume plaintiff no longer desired coverage and would so notify the producer of record and the Assigned Risk Plan. Plaintiff received a copy of this notice, but failed to pay the premium. On 9 February 1959, defendant mailed to plaintiff a "Notice of Termination of Automobile Insurance" showing effective date of termination as 12:01 A.M. 24 February 1959 and notifying insured (plaintiff) that proof of financial responsibility is re-

quired to be maintained continuously throughout the registration period and operation of a motor vehicle without maintaining such proof of financial responsibility is a misdemeanor. The notice was received by plaintiff. Within 15 days after 22 February 1959 defendant sent to the Commissioner of Motor Vehicles notice that the insurance had terminated on 22 February 1959. At approximately 2:30 A.M. on 22 February 1959 the plaintiff's automobile was involved in a collision. Defendant denied coverage, contending that cancellation was effected by insured's failure to renew, and that any statutory notice deficiencies were applicable only to cancellation or failure to renew by insurer. In that case, insured not only failed to pay the renewal premium, but he applied through the Assigned Risk Plan for further insurance which was obtained from another insurer but was not effective at the time of the accident. The Court, in holding that the insured terminated the policy, said:

"It seems clear that renewal was rejected by plaintiff. He was offered a renewal upon the condition that he pay the premium by 5 February 1959. This was in accordance with the rules of the Assigned Risk Plan. He was told that unless he paid the premium by that date he would be required to apply to the Assigned Risk Plan if he desired further insurance. He did not pay the premium on the date specified and did not offer to pay it on any other date. Instead, he applied to the Assigned Risk Plan for insurance.

Under these conditions, we hold that there was no failure to renew on the part of defendant and it was under no obligation to give plaintiff further notice of termination under the provisions of G.S. 20-310. Therefore, the coverage period of the policy ended at 12:01 A.M., 22 February 1959."

*Perkins v. Insurance Co.*, 274 N.C. 134, 161 S.E. 2d 536 (1968), was decided eight years later, the opinion for a unanimous Court being written by Bobbitt, J. (now C.J.). There the question again was whether defendant's liability under the policy issued to plaintiff terminated on account of plaintiff's failure to pay the renewal premium. The facts were these: Plaintiff's risk was assigned to defendant. Defendant issued its policy to plaintiff under the Assigned Risk Plan pursuant to the Vehicle Responsibility Act of 1957. The policy was effective beginning 7 February 1962 and its effectiveness ended at

12:01 A.M., 7 February 1963. Premium for that period was paid. Prior to 7 January 1963, defendant sent the producer of record a notice advising that in order to renew the policy plaintiff would have to pay the renewal premium 22 days in advance of the expiration date of the policy. The notice was dated 5 December 1962 and showed the renewal premium to be $55. Plaintiff received a copy of this notice prior to 7 January 1963. Plaintiff also received a notice from the producer of record. On 7 January 1963 plaintiff paid the producer of record a down payment of $15 on the premium, and the agency forwarded $43 to defendant and requested advice as to whether the premium was $43 or $55. Prior to 11 January 1963, defendant advised the agency to forward $12 so that the renewal could be processed. The agency notified plaintiff that defendant had advised the premium was $55 rather than $43 and asked that plaintiff pay the amount of $12 immediately so that the renewal could be issued. Two or three days later plaintiff telephoned the agency and was told that $12 must be paid for renewal of the policy. Plaintiff did not pay the additional sum prior to 7 February 1963. The sum of $43 was returned to the producer of record by defendant on 22 or 23 February 1963. Plaintiff's vehicle was involved in a collision on 18 February 1963. On 18 February 1963 plaintiff received a notice from defendant that his policy of insurance was terminated as of 12:01 A.M. 7 February 1963, the notice advising that proof of financial responsibility must be continuously maintained throughout the registration period and operation of a motor vehicle without maintaining such proof of financial responsibility is a misdemeanor. On 14 February 1963, and within 15 days after 7 February 1963, defendant sent to Commissioner of Motor Vehicles notice that the insurance had terminated on 7 February 1963. Defendant refused to defend actions brought against plaintiff and this suit was instituted by plaintiff to recover sums expended by him in defense of the suits. The trial court concluded that the coverage expired 7 February 1963 at 12:01 A.M. on account of plaintiff's failure to pay the renewal premium and entered judgment for defendant. On appeal defendant conceded that it did not give plaintiff the notice required by statute (15-day notice to insured marked with the words "Important Insurance Notice," containing effective date and hour of termination, and including the warning with respect to maintenance of financial responsibility and giving the penalty for failure to do so), but it contended that the policy was not terminated

by it but by plaintiff's failure to pay the premium. It was, therefore, not required to give plaintiff the notice, including the warning, required by G.S. 20-310. The Court noted that under the Assigned Risk Plan the risk is assigned to a designated company for three years, and, nothing else appearing, this defendant was obligated to renew the policy upon timely payment of the required premium by plaintiff. Here the only notice given to plaintiff by defendant prior to termination date was dated 5 December 1962, 45 days or more prior to 7 February 1963. The Court noted that defendant had ample opportunity to give the required 15-day notice. In reversing the trial court, the Supreme Court said that the decision in *Faizan* was grounded on the fact that the insured *rejected* defendant's offer to renew, that even though the notices to plaintiff were not in full compliance with the statute, they were sufficient to advise plaintiff of the consequences of his failure to renew. Insured made no response to the notices. Instead, he applied for other insurance. "In the present action, there is no evidence or finding that plaintiff *rejected* defendant's offer to renew upon payment of a premium of $55.00."

[1] In the case *sub judice,* there is no evidence or finding that plaintiff rejected defendant's offer. It does appear that the notices given are sufficient in form to satisfy the requirements of the statutory provisions and the interpretation thereof in *Faizan, Perkins, and Insurance Co. v. Davis,* 7 N.C. App. 152, 171 S.E. 2d 601 (1970), *cert. den.* 276 N.C. 327, which set out with particularity the necessary elements for an effective offer to renew. However, it is manifest that the purpose of the Vehicle Financial Responsibility Act of 1957 is to provide protection, within the required limits, to persons injured or damaged by the negligent operation of a motor vehicle. The Assigned Risk Plan provides for a risk to be assigned to a designated company for a period of three years. It also provided, at time pertinent hereto, that at least 45 days prior to the inception date of the first and second renewal policies, the company shall notify the insured that renewal policy will be issued if premium therefor is received at least 22 days prior to the inception date of the renewal policy. North Carolina Automobile Assigned Risk Plan, § 14. The statute, G.S. 20-309 (e) requires 15 days notice to Commissioner of Motor Vehicles if cancellation is by insurer. G.S. 20-310 (a) requires 15 days notice to insured, if cancellation is by insurer, together with the warning provided by that sec-

tion of the statute. The insurer is given ample opportunity to protect itself and avoid liability in cases where the insured does not pay the premium. In¹ this case, insurer had ample opportunity to give the required notice to the Motor Vehicles Department. The insurer is in the best position to know whether the premium has been timely paid, and it is its responsibility and obligation to notify the Motor Vehicles Department, in accordance with the statute, of the termination of its coverage, absent a *rejection* by insured of insurer's offer to renew the policy.

Since there is no evidence or finding in this case of rejection of the offer by insured, we hold that there was no cancellation by the insured and the coverage was extended beyond the termination date of 8 March 1968.

[2]   We come then to the question whether the notice given by the insured was effective to relieve it of its obligation to defend this action. G.S. 20-309 (e) requires that no policy may be terminated by an insurer unless it gives to the Motor Vehicles Department "notice of such cancellation fifteen (15) days prior to effective date of cancellation." Nationwide takes the position that if notice was required, then the policy should be cancelled 15 days after notice was given, that is 15 days after 13 March 1968. If that position is correct, Nationwide would be relieved of obligation to defend, because the accident did not occur until 26 May 1968. While this position finds support in situations involving cancellations under contract provisions [See annotation 96 A.L.R. 2d 286 (1964)], the question of cancellation in accord with statutory provisions as here was decided in this jurisdiction in *Insurance Co. v. Hale,* 270 N.C. 195, 154 S.E. 2d 79 (1967). There the Court had decided that cancellation of the assigned risk policy was effected by the insurer and not the insured. The notice to the Motor Vehicles Department gave "12-19-64" as the date the cancellation became effective. The notice was sent to the Department on 29 December 1964. The notice was received by the Department on 11 January 1965. The accident did not occur until 30 August 1965. Insurer argued that if cancellation was by insurer and notice to the Department therefore required, cancellation was effective and the policy terminated 26 January 1965, 15 days after the Department received notice. Defendant contended that G.S. 20-309 (e) did not contemplate nor did the Legislature intend that an insurer who had failed to give timely notice could avoid its obligation

to defend simply by claiming a new cancellation date arising 15 days after the Department received its notice. Justice Higgins wrote the opinion for a unanimous Court. He said:

> "The primary purpose of the law requiring compulsory insurance is to furnish at least partial compensation to innocent victims who have suffered injury and damage as a result of the negligent operation of a motor vehicle upon the public highway. Insurance covering liability arising out of the ownership, maintenance and use of a motor vehicle on the highway in the amount required by statute is mandatory. If the policy exceeds the amount required, the policy to the extent of the excess is voluntary. Voluntary insurance is contractual and determines the rights and liabilities of the parties *inter se*. Assigned risk insurance is compulsory both as to the insurer and the insured, made so by law. Such policy must be interpreted in the light of the statutory requirement rather than the agreement or understanding of the parties. *The requirements of the statute with respect to cancellation must be observed or the attempt at cancellation fails.* Such policies 'are generally construed with great liberality to accomplish their purpose.' *Ins. Co. v. Roberts,* 261 N.C. 285, 134 S.E. 2d 654; *Wheeler v. O'Connell,* 297 Mass. 549, 9 N.E. 2d 544, 111 A.L.R. 1038." (Emphasis supplied.)

We conclude that the first question raised by this appeal must be answered in the affirmative and the second question must be answered in the negative. The judgment of the trial tribunal is, therefore,

Affirmed.

Judges BRITT and PARKER concur.