NATIONWIDE MUTUAL INSURANCE COMPANY v. JOHN HENRY COTTEN, WILLIAM E. DIGGS, EVERLENA M. DIGGS, AND ALLSTATE INSURANCE COMPANY.

No. 145

(Filed 15 December 1971)

1. **Insurance § 95— automobile liability policy — termination — notice to Department of Motor Vehicles**

   G.S. 20-309(e) requires notice to the Department of Motor Vehicles prior to the effective date of cancellation of an automobile liability insurance policy only where the policy has been terminated by the insurer.

2. **Insurance § 95— assigned risk policy — rejection of offer to renew — termination by insured**

   When an automobile liability insurance policy terminates in consequence of the policyholder's rejection of the company's offer to renew the policy, contained in a premium notice given pursuant to the rules governing policies issued under the assigned risk plan, such termination is deemed a termination "by the insured" and not a termination "by the insurer" within the meaning of G.S. 20-309(e) and G.S. 20-310(a).

Insurance Co. v. Cotten

3. **Insurance § 95— assigned risk policy — intent to renew — certification of insurance to Department of Motor Vehicles**

   Where insured had received notice from plaintiff insurer that his assigned risk policy would terminate on 8 March 1968, the insured's certification to the Department of Motor Vehicles on 19 February that he had financial responsibility as required by The Vehicle Responsibility Act and his giving the name of plaintiff as his insurer in that certification, for the purpose of getting a 1968 license plate for his automobile, did not show an intent by the insured to renew the policy with plaintiff so as to extend its coverage beyond 8 March.

4. **Insurance § 95— assigned risk policy — termination by insured — ignoring offer to renew — notice to Department of Motor Vehicles**

   An assigned risk policy was terminated "by the insured," within the meaning of G.S. 20-309(e), by his complete ignoring of the offer of the insurer to renew the policy contained in the notice of premium sent by the insurer to the insured and received by him; consequently, termination of the policy was not contingent upon the insurer's giving notice thereof to the Department of Motor Vehicles 15 days prior to the effective date of the termination, the insurer being required only to give the Department notice "immediately" after the termination of the policy.

5. **Insurance § 95— termination of assigned risk policy — "immediate" notice to Department of Motor Vehicles**

   Where the statutory requirement is that notice be given to the Department of Motor Vehicles "immediately" after the termination of the policy becomes effective, a delay in giving notice will not defeat the termination.

6. **Insurance § 95— termination of automobile liability policy — purpose of notice to Department of Motor Vehicles**

   The purpose of notice to the Department of Motor Vehicles of the termination of an automobile liability policy is to enable the Department to recall the registration and license plate issued for the vehicle unless the owner makes other provision for compliance with The Vehicle Responsibility Act.

7. **Insurance § 95— termination of assigned risk policy — notice to Department of Motor Vehicles after termination date — termination 15 days after notice**

   Even if an autombile liability insurer had been required to give the Department of Motor Vehicles notice of the termination of an assigned risk policy 15 days prior to the effective date of the termination, notice given by the insurer to the Department subsequent to the termination date stated in the notice of premium sent to the insured would have terminated the policy 15 days after the insurer notified the Department of Motor Vehicles.

ON *certiorari* to the Court of Appeals to review its decision, reported in 12 N.C. App. 212, 182 S.E. 2d 801, affirming the judgment by *Clark, J.*, at the January 1971 Regular Civil Session of WAKE in favor of the defendant.

This is a suit for a declaratory judgment. The plaintiff seeks an adjudication that a policy of automobile liability insurance, issued by it to John Henry Cotten, affords no coverage of his liability, if any, upon claims arising out of an automobile collision on 26 May 1968, and that a policy issued by Allstate Insurance Company affords coverage thereon, by reason of an Uninsured Motorist Insurance Clause contained therein.

The following facts, renumbered and summarized for brevity, are stipulated:

1. On 26 May 1968, a Buick automobile, owned and operated by John Henry Cotten, collided with an Oldsmobile automobile, owned and operated by William E. Diggs, in which Everlena M. Diggs was riding as a passenger. Separate suits were instituted by William E. Diggs and by Everlena M. Diggs against Cotten for damages on account of property and personal injuries alleged to have been sustained by them in the collision. These actions are still pending. Nationwide Insurance Company, having denied liability under its policy of automobile liability insurance issued to Cotten, is presently defending him in these actions pursuant to a reservation of its rights.

2. On 8 March 1966, Nationwide issued, under the Assigned Risk Plan, its policy of automobile liability insurance to Cotten. The term of the policy so issued was one year. The policy was renewed for a second period of one year, 8 March 1967 to 8 March 1968. If the policy was in effect on the date of the collision, the Buick owned and operated by Cotten was an insured vehicle under the policy.

3. Allstate Insurance Company issued to Mr. and Mrs. Diggs its policy of automobile liability insurance, containing an Uninsured Motorist Clause, which policy was in full force and effect at the time of the collision.

4. Forty-five days prior to 8 March 1968 (the last day of the term of the renewal of the policy above mentioned), Nationwide offered to renew the policy, for another period of one year, by mailing to Cotten a notice of the premium for such renewal. This notice showed the termination date of the policy (i.e., the policy then in existence) was 8 March 1968, the premium for its renewal for one year was $77.80 and the date for the payment of such premium was 14 February 1968. The notice stated: "PREMIUM NOTICE FOR ASSIGNED RISK POLICY. Your automobile

policy terminates on the date shown below. You may renew your policy for another year by paying the PREMIUM before the PAYMENT DATE." Cotten received this notice in the due course of mail. A copy thereof was mailed by Nationwide at the same time to the producer of record, who received it in the due course of mail.

5. Cotten did not pay the premium called for by the premium notice.

6. On 14 February 1968 (the due date of the premium as shown on the above premium notice), Nationwide mailed to Cotten a notice of termination of the policy, showing the termination would occur at 12:01 a.m., on 8 March 1968 and that the extension endorsement which had been mailed to Cotten with the premium notice above mentioned was null and void. This bore on its face the statements required by statute. Cotten received this termination notice in the due course of mail. A copy was mailed at the same time to the producer of record, who received his copy in the due course of mail.

7. On 19 February 1968 (after the mailing to him of the above mentioned notice of premium and the above mentioned termination notice), Cotten certified to the Department of Motor Vehicles that he had financial responsibility as required by the North Carolina Financial Responsibility Act, therein giving Nationwide as the name of his insurer and referring to its above mentioned policy by number. On the basis of this certification by Cotten, the Motor Vehicle Department issued to him a 1968 license plate for the Buick automobile involved in the collision.

8. On 13 March 1968, Nationwide prepared and delivered to the Department of Motor Vehicles a notice that its said policy issued to Cotten had been terminated, effective 8 March 1968, this notice being on the Department's Form FS-4. No other notice of termination of this policy was given by Nationwide to the Department of Motor Vehicles.

9. The policy issued by Nationwide to Cotten was not one required to be certified in compliance with the provisions of the Motor Vehicle Safety and Financial Responsibility Act of 1953, as distinguished from the Vehicle Financial Responsibility Act of 1957.

It was further stipulated by the parties that the question of whether Nationwide filed with the Commissioner of Insurance and with the plaintiff (sic) notices and statements of reasons for the same is not germane to the issues raised or intended to be raised by the parties and is not material to this controversy.

Upon the foregoing stipulations, the trial court concluded that Nationwide "failed to give the North Carolina Department of Motor Vehicles notice of the cancellation fifteen (15) days prior to the effective date of the cancellation, and did fail to effectively cancel its policy, so that John Henry Cotten was an insured motorist at the time of the occurrence of the accident of May 26, 1968." The court, accordingly, adjudged that the policy issued by Nationwide to Cotten was in full force and effect at the time of the collision on 26 May 1968 and that Cotten was not at that time an uninsured motorist.

On appeal by Nationwide, the Court of Appeals affirmed.

*Smith, Anderson, Dorsett, Blount & Ragsdale by Willis Smith, Jr., and Robert R. Gardner for plaintiff.*

*Cockman, Alvis & Aldridge by Jerry S. Alvis for defendant.*

LAKE, Justice.

G.S. 20-309(e), which is part of The Vehicle Financial Responsibility Act of 1957, prior to the amendment of 1971, which has no effect upon this action, provided:

"(e) No insurance policy provided [sic] in subsection (d) [i.e., any policy providing liability insurance with regard to a motor vehicle] may be terminated by cancellation or otherwise *by the insurer* without having given the North Carolina Motor Vehicles Department notice of such cancellation fifteen (15) days prior to effective date of cancellation. Where the insurance policy is terminated by the insured the insurer shall immediately notify the Department of Motor Vehicles that such insurance policy has been terminated. The Department of Motor Vehicles upon receiving notice of cancellation or termination of an owner's financial responsibility as required by this Article, shall notify such owner of such cancellation or termination, and such owner shall, to retain the registration plate for the

vehicle registered or required to be registered, within 15 days from date of notice given by the Department, certify to the Department that he has financial responsibility effective on or prior to the date of such cancellation or termination. Failure by the owner to certify that he has financial responsibility as herein required shall be prima facie evidence that no financial responsibility exists with regard to the vehicle concerned and, unless the owner's registration plate has been surrendered to the Department of Motor Vehicles by surrender to an agent or representative of the Department of Motor Vehicles and so designated by the Commissioner of Motor Vehicles or depositing the same in the United States mail, addressed to the Department of Motor Vehicles, Raleigh, North Carolina, the Department of Motor Vehicles shall revoke the owner's registration plate for 60 days. * * * ." (Emphasis added.)

Subsection (d) of G.S. 20-309 provides that when liability insurance with regard to any motor vehicle is terminated by cancellation or failure to renew, the owner shall forthwith surrender to the Department of Motor Vehicles the registration certificate and the plates issued for the vehicle, unless financial responsibility is maintained in some other manner in compliance with The Vehicle Financial Responsibility Act of 1957.

G.S. 20-310(a), prior to its amendment in 1971, which amendment has no effect upon this action, provided:

"(a) No contract of insurance or renewal thereof shall be terminated by cancellation or failure to renew *by the insurer* until at least fifteen (15) days after mailing a notice of termination by certificate of mailing to the named insured at the latest address filed with the insurer by or on behalf of the policyholder. The face of the envelope containing such notice shall be prominently marked with the words 'Important Insurance Notice.' Time of the effective date and hour of termination stated in the notice shall become the end of the policy period. Every such notice of termination for any cause whatsoever sent to the insured shall include on the face of the notice a statement that financial responsibility is required to be maintained continuously throughout the registration period and that operation of a motor vehicle without maintaining such financial responsi-

bility is a misdemeanor, the penalties for which are loss of registration plate for sixty days; and a fine or imprisonment in the discretion of the court." (Emphasis added.)

Whether or not it was required by G.S. 20-310 under the circumstances of this case, the notice of termination mailed by Nationwide to Cotten, and received by him, was mailed prior to the date specified in G.S. 20-310(a) and bore on its face the statement required by the statute. However, a notice of termination of the policy was not given by Nationwide to the Motor Vehicles Department prior to the date stated in the notice to Cotten as the date of termination. The determinative questions upon this appeal are, therefore: (1) Does G.S. 20-309(e), under the circumstances of this case, as a condition precedent to the termination of Nationwide's risk under the policy, require Nationwide to give to the Department of Motor Vehicles notice of such termination 15 days prior to its effective date? (2) If so, did the notice given by Nationwide to the Department of Motor Vehicles, subsequent to the termination date stated in the notice to Cotten, terminate Nationwide's risk under the policy 15 days after it so notified the Department?

Apart from statute, the policy issued by Nationwide to Cotten would have terminated, by its own terms, at 12:01 a.m., on 8 March 1968. Forty-five days prior to that date, Nationwide mailed to Cotten, and he received, a notice of the premium necessary for renewal, showing the date by which such payment must be made by Cotten in order to renew the policy. By its express terms, this notice was an offer by Nationwide to renew the policy. Cotten made no response whatever to this offer. Though it was followed on 14 February by a notice of termination, showing that would occur at 12:01 a.m., on 8 March 1968, and bearing upon its face the statutory warning as to the consequence of operating a vehicle without the requisite financial responsibility, Cotten did not communicate with Nationwide prior to the accident on 26 May.

[1]   G.S. 20-309(e) expressly distinguishes between a policy terminated by the insurer and a policy terminated by the insured, with reference to when the insurer is required to notify the Department of Motor Vehicles that the policy has been terminated. It is only where the policy has been terminated by the insurer that the statute requires notice to the Department of Motor Vehicles prior to the effective date of cancellation.

[2] In *Faizan v. Insurance Company,* 254 N.C. 47, 118 S.E. 2d 303, this Court concluded that the insured had rejected the insurer's offer to renew his policy. Consequently, this Court held there was no failure by the insurer to renew and the insurer was under no obligation to give to the insured the notice of termination, required by G.S. 20-310 when termination is "by the insurer." Thus, when a policy terminates in consequence of the policyholder's rejection of the company's offer to renew the policy, contained in a premium notice given, as in the present case, pursuant to the rules governing policies issued under the Assigned Risk Plan, such termination is deemed a termination "by the insured" and not a termination "by the insurer," within the meaning of the above quoted statutes.

[3] Cotten's certification to the Department of Motor Vehicles on 19 February 1968 that he had financial responsibility as required by The Vehicle Financial Responsibility Act and his giving Nationwide as the name of his insurer in that certification was for the purpose of getting a 1968 license plate for his automobile. That certification by him to the Motor Vehicles Department did not misstate any fact, for the policy was then still in effect, notwithstanding his having received the company's notice that its termination would occur on 8 March. Thus, this certification by Cotten to the Department of Motor Vehicles does not show his intent to renew the policy so as to extend its coverage beyond 8 March. Furthermore, there is nothing in the record to indicate that his certification to the Motor Vehicles Department was brought to the attention of Nationwide. In *Faizan v. Insurance Company, supra,* the policyholder, having received the premium notice, instead of communicating with the company, applied to the Assigned Risk Plan for other insurance, but there is nothing in that case to indicate that such action by him was brought to the attention of the defendant company. These are the only differences in the facts of the two cases, relative to who terminated the policy, which we have discovered. Neither of these circumstances justifies a different conclusion upon the question of whether the policyholder rejected the company's offer to renew the policy.

*Perkins v. Insurance Company,* 274 N.C. 134, 161 S.E. 2d 536, distinguished *Faizan v. Insurance Company, supra,* on the ground that in the *Perkins* case there was no evidence or finding that the policyholder had rejected the company's offer to renew

the policy upon payment of the renewal premium. As the Court there noted, a substantial part of the renewal premium was sent by, or on behalf of, Perkins to the company, and there was uncertainty on the part of the insured as to whether the amount so sent was the full amount properly due the company for such renewal. This Court said these circumstances, known to the company, indicated a definite desire on the part of Perkins to renew the policy. Thus, we held that there had been no rejection of the offer by Perkins, so *Faizan v. Insurance Company, supra,* was not controlling, and the termination of the Perkins policy was "by the insurer," necessitating the giving to Perkins by the company of the notice of termination required by G.S. 20-310(a). The notice sent by the company to Perkins not being in compliance with the statutory requirement, this Court held that the Perkins policy was not terminated. In the present case, there was no such effort by Cotten to renew his policy. There was no communication whatever by him with the company concerning renewal. This case, therefore, falls within the rule of *Faizan v. Insurance Company, supra,* not within that of *Perkins v. Insurance Company, supra.*

In *Insurance Company v. Hale,* 270 N.C. 195, 154 S.E. 2d 79, we said that the policyholder, prior to the alleged termination of the policy, had made full payment of the renewal premium to the agent of the company for its collection. For this reason we held that the company could not lawfully terminate the policy for nonpayment of the renewal premium and, consequently, the alleged termination was ineffective. We there observed that, subsequent to the decision in *Faizan v. Insurance Company, supra,* G.S. 20-309(e) was amended so as to require the company to give to the Department of Motor Vehicles notice of a termination "by the insurer" prior to the effective date thereof, whereas, at the time of the Faizan decision, such notice to the Department was to be given after the termination became effective. This amendment of the statute has no bearing upon the authority of the Faizan case on the question of what constitutes a termination "by the insured." Consequently, *Insurance Company v. Hale, supra,* is not determinative of the present case.

In *Harrelson v. Insurance Company,* 272 N.C. 603, 158 S.E. 2d 812, also relied upon by the defendants in this case, we held that the defendant company did not have the right to terminate

the policy on account of the policyholder's failure to pay its charge for making a certification to the Motor Vehicles Department pursuant to The Financial Responsibility Act of 1957 and, consequently, its purported cancellation of the policy was not effective. The *Harrelson* case is, therefore, not controlling in the present case.

[4] We hold, therefore, that the policy issued by Nationwide to Cotten was terminated "by the insured," within the meaning of G.S. 20-309 (e), by his complete ignoring of the offer by the company to renew the policy contained in the notice of premium sent by it to Cotten and received by him. That being true, termination of the policy was not contingent upon the company's giving notice thereof to the Department of Motor Vehicles prior to the effective date of the termination.

Under these circumstances, G.S. 20-309 (e) required the company to notify the Department of Motor Vehicles of the termination of the policy "immediately." This provision of the statute contemplates such notice to the Department after the termination. Thus, the requirement of notice to the Department of Motor Vehicles was the same, under the circumstances of the present case, as in *Faizan v. Insurance Company, supra,* except insofar as immediate notice may differ from a notice given within 15 days after the effective date of the termination.

[5] At the time of the decision in *Nixon v. Insurance Company,* 258 N.C. 41, 127 S.E. 2d 892, the statute, there applicable, required that notice of termination be given to the Department of Motor Vehicles not later than 15 days following the effective date of the termination. This Court said that, since the notice to the Department of Motor Vehicles was to be given after the effective date of the termination, neither a defective notice nor a failure to give notice to the Department would affect the validity or binding effect of the termination of the policy. It follows that where, as here, the statutory requirement is that notice be given to the Department of Motor Vehicles "immediately" after the termination of the policy becomes effective, a delay will not defeat the termination.

[6] The purpose of the notice to the Department of Motor Vehicles is not the same as the purpose of the notice of termination given to the policyholder. The purpose of the notice to the Department is to enable it to recall the registration and license

plate issued for the vehicle unless the owner makes other provision for compliance with The Vehicle Financial Responsibility Act. See, *Nixon v. Insurance Company, supra.*

[4]  We, therefore, hold that the first question, above stated, should be answered in the negative. That is, under the circumstances of this case, the giving by Nationwide to the Department of Motor Vehicles of notice of termination of Cotten's policy 15 days prior to its effective date was not a condition precedent to the termination of the policy.

[7]  This being true, an answer to the second question is not essential to the determination of this appeal. If it were, it should be answered affirmatively. The purpose sought to be accomplished by the Legislature in requiring notice to be given to the Department of Motor Vehicles is fully accomplished if the life of the policy be deemed extended 15 days after the giving to it by the company of the delayed notice. The purpose of the requirement of notice to the Department of Motor Vehicles is not to provide free insurance to the policyholder who has, by his disregard of the premium notice, demonstrated that he does not intend to pay the renewal premium. There is nothing which prevents the Department of Motor Vehicles, upon receipt of the delayed notice, from acting immediately as the statute contemplates it will act upon the receipt of timely notice. Therefore, the procedures followed by Nationwide would, in any event, be sufficient to effect a termination of this policy 15 days after it gave notice to the Department of Motor Vehicles, which was substantially prior to the collision between Cotten's vehicle and that driven by Mr. Diggs.

The decision of the Court of Appeals is, therefore, reversed and the matter is remanded to it for the entry of a judgment in accordance with this opinion.

Reversed and remanded.