ROSE MARIE LEDFORD SMITH, RITA CARDEN AND FRANCES W. LEDFORD v. NATIONWIDE MUTUAL INSURANCE COMPANY AND SOUTH CAROLINA INSURANCE COMPANY

No. 130PA85

(Filed 10 December 1985)

Insurance § 95.1— automobile liability insurance—premium notice—manifestation of willingness to renew—termination for nonpayment of premium—notice requirements inapplicable

The "Premium Notice" mailed by an automobile liability insurer to the insured constituted a manifestation of the insurer's willingness to renew the policy within the meaning of N.C.G.S. 20-310(g)(1) so that the notice requirements of N.C.G.S. 20-310(f) did not apply in order for the policy to be terminated for nonpayment of premium.

ON discretionary review pursuant to N.C.G.S. 7A-31 of a unanimous decision of the Court of Appeals, 72 N.C. App. 400, 324 S.E. 2d 868 (1985), affirming the order of *McLelland, J.*, entered at the 22 August 1983 session of Superior Court, ORANGE County, granting summary judgment for defendant South Carolina Insurance Company. Heard in the Supreme Court 16 October 1985.

*Coleman, Bernholz, Dickerson, Bernholz, Gledhill and Hargrave, by Douglas Hargrave, for plaintiff appellees.*

*Moore, Ragsdale, Liggett, Ray & Foley, by Peter M. Foley, for defendant appellant.*

*Holt, Spencer, Longest & Wall, by James C. Spencer, Jr., for defendant appellee.*

MARTIN, Justice.

This appeal arises from the decision of the Court of Appeals on a petition to rehear this case. At the outset we note that the Court of Appeals withdrew the prior opinion in *Smith v. Nationwide Mut. Ins. Co.*, 71 N.C. App. 69, 321 S.E. 2d 498 (1984), and declared it no longer the law of this case. In its order granting the petition to rehear, the court stated:

> On rehearing, this Court will consider the question whether the trial court properly allowed summary judgment for the defendant South Carolina Insurance Company.

72 N.C. App. at 400, 324 S.E. 2d at 868.

The question before us is whether the Court of Appeals erred in affirming the trial court's entry of summary judgment in favor of defendant South Carolina Insurance Company on the issue of the insured's coverage under an automobile liability insurance policy. For the reasons set forth below, we answer in the affirmative.

A review of the record reveals that on 27 February 1979 Nationwide Mutual Insurance Company (Nationwide) issued to Paul Alan Smith a family automobile and comprehensive liability insurance policy covering a 1969 Chrysler automobile for a four-month period. On its face the policy provided that the policy period would run from 22 February 1979 to 22 June 1979,

> BUT ONLY IF THE REQUIRED PREMIUM FOR THIS PERIOD HAS BEEN PAID, AND FOR SIX MONTHS RENEWAL PERIODS, IF RENEWAL PREMIUMS ARE PAID AS REQUIRED. EACH PERIOD BEGINS AND ENDS AT 12.01 A.M. STANDARD TIME AT THE ADDRESS OF THE POLICYHOLDER.

On page nine of the policy, in a box headed in large bold type, "MUTUAL POLICY CONDITIONS," appeared the following statement: "PREMIUM NOTICE. Prior to the expiration of the term for which a premium has been paid, a notice of the premium required to renew or maintain this policy in effect will be mailed to the Named Insured at the address last known to the Company."

On 1 June 1979, Nationwide mailed to Smith at the address on the policy a "Premium Notice." Under this document's heading appeared the words, "SEMI-ANNUAL RENEWAL FOR POLICY TERM BEGINNING 06-22-79." It notified Mr. Smith to pay his premium due of $166.60 by 22 June 1979.[1] The back side of this notice listed the "RENEWAL PREM" amount as $166.60.

Smith did not send in his premium, and on 27 June 1979, Nationwide mailed an "Expiration Notice" to him. This notice informed Smith that his policy had expired as of 12:01 a.m. on 22

---

1. The actual renewal form sent to Mr. Smith is not before this Court; there is uncertainty as to whether the form used by Nationwide also stated on its face in capital letters, "THIS IS RENEWAL NOTICE FOR YOUR POLICY WHICH EXPIRES ON THE ABOVE DATE," above which appeared the date 6-22-79.

June 1979 as his premium of $166.60 had not been paid by 22 June 1979. The following language also appeared on the face of the notice:

> IMPORTANT—Your policy will be reinstated without interruption of protection, if payment is received within 16 days from the expiration date. Won't you take a minute now to send your payment? Make sure you have continuous protection against financial loss. If you've sent your payment, please accept this as our THANKS.

In a box immediately below this appeared the following:

NORTH CAROLINA POLICYHOLDERS ONLY

Financial responsibility is required to be maintained continuously throughout the registration period. The operation of a motor vehicle without maintaining financial responsibility is a misdemeanor, the penalty for which is loss of registration plate for 60 days and a fine or imprisonment in the discretion of the court.

The back side of this notice also stated the "RENEWAL PREM." was $166.60. Paul Smith does not deny having received the premium notice and the expiration notice.

On 5 July 1979, the day on which Mr. Smith returned to North Carolina from a Delaware vacation, his 1969 Chrysler automobile, driven with his permission by his common-law wife, Sherry Ann King, collided with a car which the plaintiff Rose Marie Ledford Smith was driving and in which plaintiff Rita Carden was a passenger. The accident was reported by telephone to a Nationwide agent on the afternoon of 5 July and in person by Mr. Smith at the agent's office on 6 July. There is deposition testimony to the effect that at this time Mr. Smith tendered $50, only a partial payment of the past-due premium to the agent, who refused to accept it but told Smith about a grace period and told him to come back and make the full payment. There is also testimony that on 11 July Paul Smith tendered full payment of the premium by check and Nationwide's agent again refused it, stating that the policy was going to be terminated for failure to pay the premium within the sixteen-day grace period after the policy's expiration date. Nationwide then sent a notice of insurance termination form (FS-4) to the North Carolina Division of

Motor Vehicles (DMV), which DMV entered into its computer on 19 July 1979. The Financial Security Unit of DMV on 20 July mailed to Mr. Smith an FS-5 form, advising him that it had received notification of the termination of his liability insurance. Also enclosed was a recertification form (FR-3) requiring Mr. Smith to certify to DMV his continuous and uninterrupted liability insurance coverage or to face a civil penalty. DMV received the FR-3 from Mr. Smith on 30 July 1979 advising that the license plate had been lost.

Plaintiffs obtained judgment on 8 October 1981 on a jury verdict against Paul Smith and Sherry King for damages in the amount of $10,000 for injuries to Rose Marie Ledford Smith and $1,500 for injuries to Rita Carden. Defendant Nationwide denied any coverage, alleging that the policy in question was not in effect at the time of the collision. Defendant South Carolina Insurance Company (South Carolina), whose uninsured motorists policy on judgment creditor Francis W. Ledford's automobile was in effect on the date of the collision, also denied coverage, alleging that Nationwide's policy was in full force and effect on 5 July 1979.

The trial court, in its order filed 6 September 1983, found that the liability insurance policy issued to Mr. Smith by Nationwide was in full force and effect on 5 July 1979 and that the uninsured motorists provisions of South Carolina's policy on Ledford's car were inapplicable and entered summary judgment for defendant South Carolina. Defendant Nationwide appealed to the Court of Appeals which, upon rehearing of the summary judgment issue, unanimously affirmed the trial court. We granted Nationwide's petition for discretionary review.

In its opinion filed 5 February 1985, the Court of Appeals found that before an insurer may cancel or refuse to renew a policy of automobile liability insurance for nonpayment of premium, the insurer must comply with the provisions of N.C.G.S. 20-310 and 20-309(e) (which require an insurer to notify DMV of the termination of an automobile liability insurance policy). *Insurance Co. v. Davis*, 7 N.C. App. 152, 171 S.E. 2d 601 (1970). N.C.G.S. 20-310 provides, in pertinent part:

(f) No cancellation or *refusal to renew by an insurer* of a policy of automobile insurance shall be effective unless the in-

surer shall have given the policyholder notice at his last known post-office address by certificate of mailing a written notice of the cancellation or refusal to renew. Such notice shall:

> (1) Be approved as to form by the Commissioner of Insurance prior to use;

> (2) State the date, not less than 60 days after mailing to the insured of notice of cancellation or notice of intention not to renew, on which such cancellation or refusal to renew shall become effective, except that *such effective date may be 15 days from the date of mailing or delivery when it is being canceled or not renewed for the reasons set forth in* subdivision (1) of subsection (d) and in *subdivision (4) of subsection (e) of this section*;

> (3) State the specific reason or reasons of the insurer for cancellation or refusal to renew;

> (4) Advise the insured of his right to request in writing, within 10 days of the receipt of the notice, that the Commissioner of Insurance review the action of the insurer; and the insured's right to request in writing, within 10 days of receipt of the notice, a hearing before the Commissioner of Insurance;

> (5) Either in the notice or in an accompanying statement advise the insured of his possible eligibility for insurance through the North Carolina Automobile Insurance Plan; and that operation of a motor vehicle without complying with the provisions of this Article is a misdemeanor and specifying the penalties for such violation.

(Emphases added.) N.C.G.S. 20-310(f)(2) refers to N.C.G.S. 20-310(e)(4) which states:

> (e) No insurer shall refuse to renew a policy of automobile insurance except for one or more of the following reasons:

> . . . .

(4) The named insured fails to discharge when due any of his obligations in connection with the payment of premium for the policy or any installment thereof. . . .

The key to our determination on this issue, however, is subsection (g) of the same statute which provides:

Nothing in this section shall apply:

(1) *If the insurer has manifested its willingness to renew* by issuing or offering to issue a renewal policy, certificate or other evidence of renewal, or has manifested such intention by any other means;

(2) If the named insured has notified in writing the insurer or its agent that he wishes the policy to be canceled or that he does not wish the policy to be renewed;

(3) To any policy of automobile insurance which has been in effect less than 60 days, unless it is a renewal policy or to any policy which has been written or written and renewed for a consecutive period of 48 months or longer.

(Emphasis added.)

Defendant Nationwide argued that its "Premium Notice" was a manifestation of its willingness to renew Paul Smith's liability insurance policy. Rejecting this contention, the Court of Appeals found that the notice only referred to the expiration date of the policy (22 June 1979), that it contained no warnings of the consequences of a failure to pay the premium, and that there was nothing in Nationwide's "Premium Notice" to make it an offer to renew a policy of insurance as contemplated by N.C.G.S. 20-310 (g)(1). Thus it found no impediment to the application of 20-310 (f)(2). Applying that subsection to the facts of this case, the Court of Appeals noted that (f)(2) provides that the fifteen-day notice period which the insurer is required to give the insured before terminating an automobile insurance policy begins on the date *the notice is mailed*. Nationwide's "Expiration Notice," however, gave a sixteen-day period from the date of the *expiration of the policy*. This, the Court of Appeals found, was improper: the requisite fif-

teen (per the statute) or sixteen (given by Nationwide) days should have commenced running as of 27 June when the notice was mailed. Therefore, the "Expiration Notice" did not comply with the statute. Moreover, the Court of Appeals said, the notice failed to advise the insured that he had a right to a hearing or to request a hearing and review by the Commissioner of Insurance and that he might be eligible for assigned risk insurance. For these reasons, the Court of Appeals held, Nationwide had failed to substantially comply with the provisions of 20-310(f) and therefore could not properly refuse to renew Paul Smith's policy pursuant to 20-310(e)(4).

Defendant Nationwide argued that it was not required to give any notice of the policy's termination to the insured because Smith's policy lapsed or expired on its own terms when he failed to pay his premium when due. While we agree that the expiration of a policy for nonpayment of premium is not a cancellation or refusal to renew under N.C.G.S. 20-310(f), our decision is based upon other grounds. We also need not resolve the question of whether this was a case of a rejection of an offer to renew by the insured.[2] Instead, we hold that Nationwide's "Premium Notice" constituted a manifestation of its willingness to renew Smith's policy; therefore N.C.G.S. 20-310(g)(1) is invoked and the requirements of 20-310(f) do not apply.

From the record before us it appears that when a policy premium is due Nationwide sends the insured a standard premium notice exactly like or similar to the one mailed to Paul Smith. This "Premium Notice" is subtitled, "SEMI-ANNUAL RENEWAL FOR POLICY TERM BEGINNING 06-22-79." (Emphasis added.) If the premium is not remitted, the policy automatically lapses and the insurance carrier then sends an "Expiration Notice" which gives the insured an opportunity to reinstate the expired policy if he pays the premium within sixteen days of the lapsed policy's expiration date—even if an accident has occurred in the interim between the policy's expiration and the end of the 16-day grace period, as it did here. Not only did the "Premium Notice" and the "Expiration Notice" give Smith adequate notice of his policy's ex-

2. This was clearly not a "cancellation" of the insured's policy because the policy was not unilaterally terminated by the insurer before the end of the stated term. *Scott v. Allstate Insurance Co.*, 57 N.C. App. 357, 291 S.E. 2d 277 (1982).

piration and afford him an opportunity to renew, but he was also specifically told in person by Nationwide's agent that his accident would be covered if he would just pay the full premium due. Smith did not do so. It can hardly be disputed that the premium notice taken in combination with the expiration notice and the interview with the carrier's agent comprised a sufficient manifestation of Nationwide's willingness to renew to justify invocation of the provisions of N.C.G.S. 20-310(g). In fact, in this case we find that the "Premium Notice" by itself was enough to constitute a manifestation of the carrier's willingness to renew.

Our decision is commanded by the facts of the case before us, prior holdings on similar issues, and our interpretation of the legislative intent behind the enactment of N.C.G.S. 20-310. Regarding the former, the Court of Appeals determined the case of *Insurance Co. v. Davis*, 7 N.C. App. 152, 171 S.E. 2d 601, to be controlling in their decision. *Davis* was decided prior to the 1971 amendment to N.C.G.S. 20-310 and is readily distinguishable on its facts. The contrast is brought into sharp focus by comparing the following exerpt from *Davis* with the situation before us:

> This premium notice makes no reference to the expiration date of the policy. It contains no warning regarding the consequences of a failure to pay the premium. The notice standing alone does not indicate that the policy is subject to renewal on 21 June 1967 but simply that a semi-annual premium payment is due on that date.

*Id.* at 159, 171 S.E. 2d at 605. In the instant case, the premium notice specifically tells Mr. Smith that his policy is going to expire and states in two places the date on which the policy will expire. It also states, in a prominent location, "This is renewal notice for your policy which expires on the above date," and is subtitled, "Semi-annual renewal for policy term beginning 6-22-79." On the back side of the form, the expiration date appears again, as well as an itemized list of the coverage type, policy limits, and premium, at the bottom of which the total "RENEWAL PREM" amount appears. This is more than "simply a statement of an account that will be due on the date indicated," as was found in *Davis*, 7 N.C. App. at 160, 171 S.E. 2d at 605; the notice in the present case clearly communicates to the insured that it is a

statement indicating the amount to be paid in the event the policy is renewed.

The result in this case is in accord with our prior decisions. In *Faizan v. Insurance Co.*, 254 N.C. 47, 118 S.E. 2d 303 (1961), the insurance carrier notified the insured in January that his policy would expire on 22 February unless it was renewed by the payment of a premium by the "premium due date," 5 February. The insured did not ever pay or offer to pay the premium. The policyholder's automobile was involved in an accident approximately two hours after the liability coverage had expired by its own terms. The insurer contended that it had no duty to send an additional notice to the insured according to the provisions of N.C.G.S. 20-310, which at that time mandated that "[n]o contract of insurance or renewal thereof shall be terminated by cancellation or failure to renew by the insurer until at least fifteen (15) days after mailing a notice of termination by certificate of mailing to the named insured . . . ." In deciding that the nonrenewal was not by the insurer but was the unilateral act of the insured, the Court, via Justice Moore, said:

> The question in the instant case comes to this: Did plaintiff reject a renewal policy or did defendant terminate the policy coverage? It seems clear that renewal was rejected by plaintiff. He was offered a renewal upon the condition that he pay the premium by 5 February 1959. This was in accordance with the rules of the Assigned Risk Plan. He was told that unless he paid the premium by that date he would be required to apply to the Assigned Risk Plan if he desired further insurance. He did not pay the premium on the date specified and did not offer to pay it on any other date. . . .

> Under these conditions, we hold that there was no failure to renew on the part of defendant and it was under no obligation to give plaintiff further notice of termination under the provisions of G.S. 20-310.

254 N.C. at 59, 118 S.E. 2d at 311.

Defendant-appellee, South Carolina, attempts to distinguish *Faizan* from the case before us on the grounds that in *Faizan* the insured did not pay the premium and instead applied to the Assigned Risk Plan for other insurance. Thus in *Faizan* it was the

application for other insurance by the insured that constituted the rejection of the insurer's offer to renew. We find this argument unpersuasive. Not only is there no evidence indicating that Mr. Faizan ever notified the insurer that he was applying for insurance elsewhere, we think it is clear that the critical point decided in that case is that where the insurer gives timely notice to the insured of the expiration date of an automobile liability insurance policy along with an offer to renew the policy if the premium is paid by the due date, no further notice to the insured is required.

Our case of *Insurance Co. v. Cotten*, 280 N.C. 20, 185 S.E. 2d 182 (1971), also supports the result reached here. Although it differs from the instant case in the respect that the issue decided in *Cotten* involved the necessity for notice to the DMV under N.C.G.S. 20-309(e) and not notice to the policyholder under 20-310, the ultimate issue on which the case turned was the same. In that case, the insurer mailed a premium notice to Cotten forty-five days before his policy was due to terminate on 8 March. In the premium notice, Cotten was informed that he could renew his policy for another year by paying the premium by its due date, 14 February. Cotten never paid the premium. On 14 February, the carrier mailed to Cotten a notice of termination of the policy. Justice Lake cited *Faizan* for the proposition that when a policy terminates as a result of the insured's rejection of the insurer's offer to renew the policy as contained in a premium notice, "such termination is deemed a termination 'by the insured' and not a termination 'by the insurer,'" within the meaning of N.C.G.S. 20-310 and -309(e). *Cotten*, 280 N.C. at 27, 185 S.E. 2d at 186. The Court went on to hold that "the policy issued by Nationwide to Cotten was terminated 'by the insured,' . . . by his complete ignoring of the offer by the company to renew the policy contained in the notice of premium sent by it to Cotten and received by him." 280 N.C. at 29, 185 S.E. 2d at 188. Because Cotten disregarded the premium notice, demonstrating that he did not intend to pay the premium, his policy was not in effect and his 26 May accident was not covered.

The case of *Perkins v. Insurance Co.*, 274 N.C. 134, 161 S.E. 2d 536 (1968), relied upon heavily by defendant South Carolina, is distinguishable from *Faizan* and *Cotten* on its facts. In that case, where a substantial portion ($44) of the $55 renewal premium was

sent to the insurer by or on behalf of the insured, who was unsure as to whether the amount sent was the full amount due for renewal, the Court could find no evidence to support a conclusion that the policyholder had rejected the carrier's offer to renew and determined that the insured had indicated "a definite desire . . . to renew the policy." The Court therefore held that there was no rejection by the insured and that the policy had been improperly terminated by the insurer. 274 N.C. at 143, 161 S.E. 2d at 542. We do not find *Perkins* persuasive on the issue before us.

We recognize that where a compulsory automobile insurance policy is cancelled by the insurer mid-term or where the carrier refuses to renew a compulsory policy, it is a serious matter for the insured. The provisions of N.C.G.S. 20-310 exist for precisely such cases. They require the carrier to give the policyholder specific notice and in addition provide the insured with the opportunity for a hearing and the right to apply to the Insurance Commissioner for a review of the actions of the insurer in cancelling or refusing to renew the policy. However, such provisions were not intended to apply to the situation in which the policy is simply not renewed for nonpayment of premiums where, as here, the insurer's "Premium Notice" put the insured on notice of the need to renew and afforded him an opportunity to do so. Nationwide's premium notice clearly indicated the company's willingness to reinstate Smith's expired policy, and that is precisely what is contemplated by subsection (g) of N.C.G.S. 20-310. To hold otherwise would demand that the requirements of N.C.G.S. 20-310(f) be met in all cases where there is nonpayment of a premium. Insurers, then, could never have proper termination without complying with the formal termination requirements of 20-310(f) and, as a result, subsection (g) would be superfluous. Indeed, for it to have any effect, the insurer would have to manifest a willingness to renew with notices containing the very requirements subsection (g) seeks to avoid. Surely the legislature did not envision such a Catch-22. Here, Nationwide's manifestation of willingness to renew was evidenced by its "Premium Notice," which obviated the need for further notice, and we so hold.

As neither the trial court nor the Court of Appeals passed upon the punitive damages issue, it is not properly before us.

For the reasons stated here, defendant South Carolina was improperly granted summary judgment. Accordingly, the decision of the Court of Appeals is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.