**TEXAS SPECIALTY UNDERWRITERS, INC., Appellant,**

v.

**Terry TANNER, Appellee.**

No. 05–96–01779–CV.

Court of Appeals of Texas, Dallas.

March 8, 1999.

Thomas Murto, III, Andy Fifield, Dallas, for Appellant.

Jonathan H. Allen, Dallas, for Appellee.

Before Justices LAGARDE, KINKEADE, and WRIGHT.

## OPINION

ED KINKEADE, Justice.

This is a summary judgment case. We must decide whether an insurance policy covering a home leased to tenants lapses when an offer to renew the policy is not accepted on or before the expiration date of the original policy.

Relying on *Trinity Universal Insurance Company v. Burnette,* 560 S.W.2d 440 (Tex.Civ.App.—Beaumont 1977, no writ), the trial court held that the policy automatically renewed on its expiration date because the insurer did not mail the insured a notice of nonrenewal in conformance with the requirements of article 21.49–2B, section 5 of the Texas Insurance Code, and there was no evidence that the insured exercised his option *not* to renew the policy. We hold that where an insured receives an offer to renew approximately sixty days prior to the expiration of the existing policy, but does not accept it by timely payment of the renewal premium, or any other action that could constitute acceptance, the policy lapses on its expiration date. In these circumstances, the insurer is not required to mail the insured a notice of nonrenewal. Accordingly, we reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.

The summary judgment record reveals the following undisputed facts. Texas Specialty Underwriters, Inc. issued an insurance policy to Terry Tanner, the owner of a one-story home that he leased to tenants. The policy went into effect on October 25, 1994 and expired by its terms at 12:01 a.m. on October 25, 1995. The producer for the policy was Ramsey Insurance Agency. On August 10, 1995, Texas Specialty mailed a letter to Ramsey indicating that the policy would expire on October 25, 1995 and offered a renewal for an annual premium of $498.51. Ramsey, in turn, wrote to Tanner on August 15, 1995. Ramsey's letter to Tanner stated:

Your dwelling policy will expire 10–25–95. We are pleased to offer renewal for an annual premium of $498.51. This renewal does not reflect any change in coverage limits. Please advise your renewal instructions below and return to our office. Enclosed you will also find a premium finance agreement, please sign and return with your check or money order payable to Ramsey Insurance Agency. A self-addressed, postage paid return envelope is enclosed for your convenience. In an effort to provide your renewal policy on or before your current expiration date, we ask that you reply no

later than 10–01–95. Your prompt attention is appreciated.

Thank you for choosing Ramsey Insurance Agency, we look forward to servicing your insurance needs. If you have any questions, or if we can provide additional services, please feel free to contact our office.

Your down payment will be $180.51.

Thank you.

Loretta

Tanner admits he received the above letter about sixty days before his current policy was scheduled to expire. He further admits he did not respond to Ramsey's letter or contact Ramsey about renewing the policy before October 25, 1995. In fact, the summary judgment evidence establishes that Tanner did not contact Ramsey about renewing the insurance policy until after the home burned down on November 3, 1995. Shortly after the fire, Tanner appeared at Ramsey's office with the $180.51 down payment for the policy renewal. He also informed Ramsey that the house had been destroyed by fire. Ramsey declined to renew the policy. Texas Specialty denied Tanner's claim for the loss caused by the fire. Tanner responded by filing this lawsuit against Texas Specialty seeking recovery for the loss under the policy.

Tanner moved for summary judgment asserting that the policy renewed upon its expiration as a matter of law because Texas Specialty did not mail him a notice of nonrenewal thirty days in advance of the policy expiration date, and Tanner never requested that the policy *not* be renewed. Texas Specialty opposed the summary judgment motion contending that the insurance policy did not automatically renew on its expiration date. The trial court granted summary judgment in Tanner's favor. Texas Specialty appeals that judgment.

The insurance policy was not part of the summary judgment evidence. Only the declaration page of the policy is contained in the appellate record. It indicates the effective dates of the policy were from October 25, 1994 to October 25, 1995. We do not know what the insurance policy provided in terms of renewal or nonrenewal. Therefore, the sole issue to be addressed in this appeal is the applicability of the nonrenewal notice provision in article 21.49–2B, section 5 of the Texas Insurance Code to the facts of this case.

■ Section 5 provides:

Nonrenewal of policies; notice required

An insurer shall renew a policy on its expiration, at the option of the insured, unless the insurer has mailed written notice of nonrenewal to the insured not later than the 30th day before the date on which the policy expires.

TEX. INS.CODE ANN. art. 21.49–2B, § 5 (Vernon Supp.1999). Tanner contends, and the trial court agreed, that the above provision automatically renews an insurance policy on its expiration date unless (1) the insurer sends the insured the requisite notice of nonrenewal or (2) the insured exercises his option not to renew the policy. In support of this position, both Tanner and the trial court rely heavily on *Burnette*. Although *Burnette* was decided prior to the enactment of article 21.49–2B, the case involved an insurance policy provision and a State Board of Insurance regulation almost identical to that of section 5. *See id.* at 441 nn.1 & 2. For the reasons that follow, we do not find *Burnette* persuasive or controlling in this case.

In *Burnette,* the insurer incorrectly thought that Burnette's home insurance policy had been renewed. *Id.* at 441–42. After Burnette's home was destroyed by fire, the mistake was apparently discovered and the insurer declined coverage. *Id.* In addressing the coverage issue, the court summarily assumed, without analysis, that the policy automatically renewed at expiration, stating that under the policy provision and the regulation, the only ways the policy could not be renewed were at Burnette's option or upon thirty days' notice by the insurer. *Id.* at 442. Finding that neither alternative was applicable in the

circumstances presented, the court concluded that the insurer renewed the policy as a matter of law. However, in so concluding, the court specifically noted that it did not reach the question of Burnette's failure to pay premiums on the renewal policy because no party had raised that issue. *Id.* at n. 3. This case involves the precise issue not reached by the court in *Burnette*—namely, the insured's failure to pay renewal premiums when due. Because *Burnette* is distinguishable on its facts, we conclude it is inapplicable to this case.

Tanner has not cited any other case, nor have we found one, that specifically addresses the meaning or purpose of section 5. We therefore look to the statute to determine its applicability to the facts presented. When analyzing a statute, we determine the legislative intent and liberally construe the statute to achieve that purpose and promote justice. *See City of Dallas v. Cornerstone Bank, N.A.,* 879 S.W.2d 264, 269–70 (Tex.App.—Dallas 1994, no writ). When determining a specific provision's intent, the entire Act must be examined. *See Trinity Universal Ins. Co. v. Fidelity & Cas. Co.,* 837 S.W.2d 202, 204 (Tex.App.—Dallas 1992, no writ). If the statute is clear and unambiguous, we simply apply the plain and common meaning of the words and terms to determine the legislature's intent. *Id.* However, if the wording is ambiguous, we turn to rules of statutory construction and other aids such as legislative history. *See City of Dallas,* 879 S.W.2d at 270. Whether or not the statute is ambiguous on its face, we consider the statute's objective and the ramifications of any particular construction. *See id.*(citing Tex. Gov't Code Ann. § 311.023 (Vernon 1988)).

When read in its entirety, and in conjunction with other sections of article 21.49–2B, section 5 evinces an intent to ensure policyholders receive advance notice when the insurer intends not to renew a policy. By requiring the notice of nonrenewal to be sent thirty days before the expiration date of the current policy, the policyholder is afforded adequate time to locate replacement insurance so coverage will continue uninterrupted. An insurer loses its option not to renew a policy if it fails to issue the requisite notice. In that event, it is the insured that has the option whether or not to renew coverage. We conclude section 5 requires the insurer to issue notice only if the insurer refuses to renew the contract. When the insurer offers to renew the contract and the insured does not accept the offer to renew, the notice requirements of section 5 do not apply because it is the insured and not the insurer who has failed to renew. Nothing in section 5 or in the remaining sections of the article suggest that the renewal is automatic upon an insurer's failure to send a nonrenewal notice. To the contrary, section 11 of article 21.49–2B states:

> If an insurer fails to give notice of nonrenewal of a policy as required by Section 5 of this article, the insurer shall renew the policy *at the request of the insured.*

Tex. Ins.Code Ann. art. 21.49–2B, § 11(b)(Vernon Supp.1999)(emphasis added).

■ There is no indication that the section 5 notice provision applies to situations where the insurance company intends to renew the policy and, in fact, sends an offer of renewal to the insured in advance of the current policy expiration date. By its very heading, section 5 applies to nonrenewals and not to offers to renew. Importantly, even section 5 recognizes that an insured cannot be forced to renew a policy that he does not want. The section specifically provides renewal *"at the option of the insured,"* suggesting that if a nonrenewal notice is not sent, the ultimate decision of whether to renew rests with the insured. However, once the insured is given that option in an offer to renew and does not accept the offer by either paying the required renewal premium before his current policy expires, or taking other action that could constitute acceptance, we conclude the policy expires by its own

terms and notice under section 5 is not required.

Tanner's construction would have the effect of automatically renewing a policy at expiration, irrespective of whether an insurer has offered to renew the policy or whether the renewal premium has been paid prior to the expiration date of the current policy. This interpretation would be a significant departure from case law applying basic contract principles of offer and acceptance to offers of renewal. *See Zuniga v. Allstate Ins. Co.*, 693 S.W.2d 735, 738 (Tex.App.—San Antonio 1985, no writ); *see also Cox v. Gulf Ins. Co.*, 858 S.W.2d 615, 616 (Tex.App.—Fort Worth 1993, no writ). To construe section 5 as Tanner requests would create an automatic policy renewal that could result in a policyholder becoming liable for a renewal premium on an unwanted policy simply because the insurance company never sent a notice of nonrenewal and the policyholder never affirmatively opted not to renew the policy. Insureds should be able to rely on a policy expiration date without being subject to potential liability for unwanted renewal premiums. Yet, under Tanner's interpretation, that would be the effect of section 5 if the insurer failed to send a notice of nonrenewal. The fact that policies contain expiration dates and are subject to procedures concerning renewals and nonrenewals demonstrates that policies provide coverage only for the period specified and coverage ceases when the policy is not renewed. Under the interpretation urged by Tanner, a policy could never expire by its own terms. Policy expiration dates would have no effect and policies would provide perpetual coverage until either the insured or insurer took steps to terminate the policy. Moreover, if section 5 automatically renewed a policy on its expiration unless the insured affirmatively opted not to renew the policy, then section 11(b) requiring the insured to request renewal, would be completely meaningless.

Absent clear language evidencing such an intent, we will not read section 5 as requiring insurers to mail a notice of non-renewal thirty days prior to the policy expiration date after they have already offered to renew the policy. Such an interpretation would be inconsistent with section 11(b) of the statute and would effectively eviscerate case law holding that renewal offers must be accepted in order to form binding contracts. *See Zuniga*, 693 S.W.2d at 738; *Cox*, 858 S.W.2d at 616. If the legislature intended policy renewals to be automatic, it could have easily drafted such a provision.

We note that much of the confusion surrounding the applicability of section 5 to this case results from the legislature's silence regarding renewal offers. While some might argue that this silence speaks loudly in support of Tanner's proposed construction of section 5, we are reluctant to infer such a construction based on the legislature's silence in light of the fact the result is at odds with prior case law. Many states have avoided this confusion by enacting specific guidelines and procedures that an insurer must follow when it decides to renew an insurance policy. Cases construing these statutes in other jurisdictions demonstrate that nonrenewal notice provisions do not apply when an insurer offers to renew a policy in accordance with statutory provisions regarding renewals; rather, nonrenewal notice provisions apply when an insurer decides not to renew a certain policy. *See, e.g., Lopez v. New Jersey Full Ins. Underwriting Ass'n*, 239 N.J.Super. 13, 570 A.2d 994, 996–98 (App.Div.), *certif. denied*, 122 N.J. 131, 584 A.2d 206 (1990); *Smith v. Nationwide Mut. Ins. Co.*, 315 N.C. 262, 337 S.E.2d 569, 575 (1985).

Our decision today is limited to instances where the insured receives an offer to renew the policy sixty days before the expiration of his current policy and fails to respond to the offer prior to the expiration of the policy or to otherwise indicate a desire to renew the policy until after the current policy period expires. We do not reach the issues presented when an insurer fails to send an insured an offer to

renew or sends the renewal offer too close to the expiration date of the current policy for the insured to respond before the policy expires. These issues are not before us and they need not be addressed at this time. However, they are just a few examples of the unanswered questions that renewal offers present and that might be addressed by the legislature.

We overrule Tanner's sole point of error. The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.